THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v.
RUBEN JOHNSON, Defendant-Appellant.

First District (4th Division)   No. 85—3000

Opinion filed August 13, 1987.—Rehearing denied October 26, 1987.

James J. Doherty, Public Defender, of Chicago (Andrea Monsees, Assistant Public Defender, of counsel), for appellant.

Richard M. Daley, State's Attorney, of Chicago (Thomas V. Gainer, Jr.,

James E. Fitzgerald, and Laura M. Lambur, Assistant State's Attorneys, of counsel), for the People.

JUSTICE LINN delivered the opinion of the court:

After a bench trial, defendant, Ruben Johnson, was convicted of one count of criminal sexual assault, three counts of aggravated criminal sexual assault, and one count of unlawful restraint. He was sentenced to concurrent prison terms of 15 years on all charges.

On appeal, he contends: (1) he was not proved guilty beyond a reasonable doubt; (2) multiple convictions of aggravated criminal sexual assault predicated on aggravated battery and unlawful restraint are improper and redundant; and (3) the court improperly considered certain aggravating factors during the sentencing hearing.

We affirm as modified.

BACKGROUND

Complainant testified that she met Johnson January 25, 1985, when he was in a cafeteria line at the Woolworth's store where she worked. Complainant was serving food at the time and Johnson initiated a conversation. He asked her out for a drink, which she refused, and he then began to give her "a hard way to go."

When she finished working for the day, complainant went across the street to a restaurant for a drink. A friend of hers, Cathy Jones, was also in the bar. Johnson approached complainant, introduced himself and apologized for his behavior at the store. He bought her a drink and they began conversing. Complainant's friend left shortly thereafter.

During the course of the conversation, complainant told Johnson that she was interested in moving to the north side of the city. He invited her. to come to his apartment building on the north side, which he claimed had some vacant apartments that he could show her. The two left and took the el to Johnson's neighborhood. On the way, Johnson purchased beer, vodka, and cigarettes.

At the apartment building, complainant spoke briefly to the desk clerk, who indicated that he knew Johnson. She followed him to his one-room apartment. Johnson offered her a beer, which she accepted. She stood by the window for a period of time, drinking, after which she turned around and saw Johnson sitting in a chair, naked from the waist down.

She told Johnson, "I don't know what you are looking at me for, because I am not going to do anything." He stood up and opened the bottle of vodka, telling complainant to take a drink. She refused, and

he hit her on the left side of the face. He again demanded that she take a drink, which she did, and then another. She testified that she did as she was told because she was frightened.

Johnson then ordered complainant to lie on the bed. He also told her to remove her clothes. When she refused, Johnson hit her and repeated his demand. She removed her clothes and lay on the bed, crying.

Johnson grabbed complainant by the arm, forced her onto her stomach and anally raped her. She began screaming and asked him to stop because of the pain. Johnson hit her again on the side of the face and told her to shut up. He then lay on the bed and forced her to perform fellatio. He hit her in the face, telling her that she was not doing it right, and grabbed her by the hair. He forcibly moved her head up and down for approximately five minutes. Then Johnson vaginally raped her.

Complainant asked to use the bathroom. Once inside, she attempted to lock the bathroom door and to open a second door she saw in the bathroom. She was unsuccessful. Johnson then entered the bathroom, hit complainant into a wall, and ordered her out. He threw her onto the bed, where he again anally raped her.

Complainant testified that each time she screamed or asked Johnson to stop he hit her. When he finished this rape, he gave her a beer and rifled through her purse. She defecated on the floor when she stood up and he hit her again, ordering her to clean it up.

Johnson grabbed complainant by the neck and threw her onto the bed. He began choking her and she screamed, asking him to stop. He got up and grabbed a hammer, which he raised over her, but did not strike her with it. Johnson then went to the kitchen, ate some food, and went to sleep on the bed.

Complainant testified that she sat at the foot of the bed, hugging her knees. She was frightened. She eventually fell asleep in that position. At 6 a.m. Johnson awakened and ordered her out of the apartment.

Once she returned home, she washed herself and put on pajamas. When she could no longer stand the pain from her injuries she called a friend to take her to the hospital. She testified that she did not want to tell anyone but the police what had happened. She told her friend and the hospital desk clerk that she had been robbed and beaten. The clerk telephoned police. She was examined by medical personnel. Nine days after the attack, her injuries were photographed.

Complainant told the police that Johnson had forced her to accom-

pany him by threatening to kill her. At trial, however, she explained that she lied about that because she was afraid that nothing would be done if she told them that she had voluntarily accompanied Johnson.

Approximately one week after the offenses, complainant found Johnson staring at her at Woolworth's. She immediately telephoned the detectives assigned to the case. Early the next morning the detectives drove complainant around Johnson's neighborhood until she was able to identify the building. She also saw Johnson and identified him as the one who raped her. He was arrested.

A friend and co-worker of complainant's testified at trial. She corroborated complainant's testimony as to Johnson's harassment in the cafeteria line. She was the one who drove complainant to the hospital the day following the offenses and testified that she observed that complainant had a black eye on the left side of her face, that her face and lips were swollen, and that she had scratches on her neck. She also testified that complainant complained of the pain.

The stipulations of two doctors were admitted into evidence. The medical stipulations corroborated the existence of multiple facial bruises, swelling and black eye. The reports also indicated no evidence of trauma to complainant's anus or vagina, although the presence of sperm in the vagina was noted.

The defense motion for directed finding was denied. Johnson offered into evidence the stipulation of the officer who had interviewed complainant on January 27, 1985. The stipulation recorded the officer's testimony that complainant had said Johnson threatened her life if she did not accompany him to the apartment.

Following closing arguments, the court made a number of findings, including one that complainant was "an extremely believable witness." The court entered judgment on 5 out of 36 counts of the indictment and dismissed the remainder.

At the sentencing hearing the State offered in aggravation the beating that Johnson administered. The past record of Johnson, which revealed 10 felony convictions, was also introduced. In mitigation, the defense offered the fact that he had not been convicted of any crime since his release from prison in 1979 and the fact that he was employed. The State asked for a 25-year term of imprisonment and the defense asked for the minimum sentence of six years.

The court found that even though he had no convictions since 1979, Johnson had demonstrated that he could not live in society for long without breaking the law. The court further noted that complainant was naive in going to Johnson's apartment but that this was no justification for her being beaten and sexually assaulted. Accordingly,

the court sentenced Johnson to 15 years in prison.

OPINION

I

Johnson contends that his guilt was not proved beyond a reasonable doubt because complainant voluntarily accompanied him to his apartment, slept in his apartment for several hours after their last intercourse, did not immediately report the occurrence to the police, falsely told the police that she had been kidnapped, and suffered no trauma to her anus or vagina. Furthermore, he asserts, since the court acquitted him on the counts having to do with anal and oral sexual assault, he should have been acquitted of the counts based upon vaginal sexual assault.

The trial court, on the other hand, explicitly found complainant to be "an extremely credible witness," citing her demeanor, "the manner of her testifying, her physical appearance, her voice, [and] her inflection." He found her naive, but hardly deserving of a brutalized sexual attack.

■■ ■ A defendant may not be found guilty of criminal sexual offenses unless the testimony of the complaining witness is clear and convincing or else corroborated by other evidence. (*People v. Morgan* (1986), 112 Ill. 2d 111, 492 N.E.2d 1303.) Such determination is made by the court or jury based on an assessment of the evidence and the credibility of the witnesses. (*People v. Reese* (1973), 54 Ill. 2d 51, 294 N.E.2d 288.) In reviewing the court's findings in the pending case we note that the points that Johnson makes are out of context of the entire occurrence. Most significantly, he omits any reference to the unrefuted evidence of complainant's bruises, swelling, and black eye.

It is true that some of complainant's conduct appears to undermine her credibility, at least in the sense that a reviewing court with a cold record may pause over her failure to leave the apartment when Johnson was asleep and her falsely telling the police that he had kidnapped her. However, both acts do have explanations that the trial court found to be reasonable under the circumstances. Complainant testified that she initially lied to the police about the voluntariness of her accompanying Johnson to the apartment because she was afraid that they would do nothing unless she said she was forced to go with him against her will. Given the defense theory that the subsequent sexual acts were nothing more than consensual, "rough sex," it is an understandable concern. Moreover, had she wanted to falsely accuse Johnson of the criminal sexual assaults she could have failed to re-

tract her story of the initial kidnapping in the hopes of strengthening her case. Instead, she admitted her untruthful statement.

We believe that the trial court was justified in its express finding that the two "impeaching items" (her falsehood and her lack of immediate outcry) were outweighed by her believability "in the overall scheme of [the] case," and that her testimony was "in certain respects corroborated by the bruises, the beating and *** in one specific event by the evidence of sperm found in the vaginal tract."

▮ In some cases, the failure to immediately report a sexual assault may undermine credibility. (*People v. Appleby* (1968), 104 Ill. App. 2d 207, 244 N.E.2d 395 (lack of evidence of prompt complaint was one element that rendered complainant's testimony less than clear and convincing).) However, corroboration may be derived from photographs or other evidence of the victim's injuries. *People v. McKendrick* (1985), 138 Ill. App. 3d 1018, 486 N.E.2d 1297.

In the present case, complainant testified as to a long, frightening series of sexual attacks accompanied by repeated beatings. She was in the apartment of a virtual stranger in a section of town at least an hour's el ride from her home, at night. She had attempted to find an escape once, while in the bathroom, but had been hit, raped again, and choked following her unsuccessful escape attempt. It is difficult to judge her mental state after such repeated brutality; however, it is likely that she was in a state of such shock, fear, or generalized trauma that she ceased to think rationally about escape after Johnson finally fell asleep. As for her delay in going directly to the police, she may have felt shame, fear, or sheer numbness because of the repeated assaults. In any event, she did report the offenses to the authorities soon after returning home and going to the hospital. She followed up by contacting the detectives when she next saw Johnson and by riding around in his neighborhood with them until she located his apartment building and identified Johnson himself.

The medical stipulations and photographs, as well as testimony from the friend of complainant who drove her to the hospital, amply corroborated her testimony as to the beatings. There was also the presence of sperm in her vagina, corroborating the sexual penetration element of the criminal sexual assault charges. (Ill. Rev. Stat. 1985, ch. 38, par. 12—13.) Aggravated criminal sexual assault requires the act of forcible penetration to be accompanied by "bodily harm" or other aggravating circumstances. Ill. Rev. Stat. 1985, ch. 38, par. 12—14(2).

▮ ▮ We find that the record supports Johnson's conviction beyond a reasonable doubt of aggravated criminal sexual assault based

on forcible vaginal penetration accompanied by bodily harm (count 9). The record further supports his conviction on one count of unlawful restraint (count 34). (See *People v. Satterthwaite* (1979), 72 Ill. App. 3d 483, 391 N.E.2d 162 (two-minute impairment of victim's freedom of locomotion constituted unlawful restraint); *People v. Seider* (1981), 98 Ill. App. 3d 175, 423 N.E.2d 1217.) As for the other three convictions based on criminal sexual assault and aggravated criminal sexual assault, we vacate them for the reasons that follow.

## II

Johnson makes several related arguments that he was given improper multiple convictions and sentences for the same acts, which violated his constitutional rights.

■ The State concedes that two counts of aggravated criminal sexual assault (counts 22 and 23) should be vacated as being multiple convictions for the same offense as count 9, citing *People v. King* (1977), 66 Ill. 2d 551, 363 N.E.2d 838 (more than one offense may not be carved from the same physical act). Count 23 was based on forcible vaginal penetration accompanied by aggravated battery and count 22 was based on forcible vaginal penetration accompanied by the unlawful restraint. Further, the State concedes that the conviction and 15-year sentence on the criminal sexual assault charge (count 2) must be vacated as being a lesser included offense of aggravated criminal sexual assault. *People v. Boyer* (1985), 138 Ill. App. 3d 16, 485 N.E.2d 460.

■ We agree that the above three convictions and accompanying 15-year sentences should be vacated. We do not believe a remand for resentencing on the remaining counts 9 and 34 are necessary, however, because the 15-year sentence for aggravated criminal sexual assault based on bodily harm is well within the court's discretion and is amply borne out by the facts of the case. There is no evidence of any prejudice to Johnson by the imposition of this sentence on count 9 merely because the other counts were also given concurrent 15-year sentences; the total sentence remains the same. Since the record reflects that the court imposed separate, concurrent terms for the separate convictions, rather than a single term for all convictions, remandment is not necessary. *People v. Donaldson* (1982), 91 Ill. 2d 164, 170-71, 435 N.E.2d 477, 480; see also *People v. Einstein* (1982), 106 Ill. App. 3d 526, 535, 435 N.E.2d 1257, 1264 ("Where there is no indication from the record that a vacated conviction had any bearing on the sentence, it is not necessary to remand the cause for resentencing").

■ While we are also affirming the conviction of unlawful restraint (count 34), we note that the 15-year sentence imposed on it is improper because the offense is a Class 4 felony, which carries a maximum term of three years. (Ill. Rev. Stat. 1983, ch. 38, pars. 10—3(b), 1005—8—1.) Accordingly, pursuant to our authority under Supreme Court Rule 615(b)(4), we reduce the sentence on the unlawful restraint count to three years, to run concurrently with the 15-year sentence for aggravated criminal sexual assault. 107 Ill. 2d R. 615(b)(4).

### III

■ Johnson's final argument is that the trial court erred in its consideration of certain factors in mitigation and aggravation of his sentence. Specifically, he challenges the court's "disregard" of the fact that Johnson had been apparently law-abiding since 1979 and the court's comment that "throughout his life, since 1952, he's been in and out of jams with the police and back and forth, in and out of jail." He claims that the latter comment is an impermissible reference to arrests and encounters that did not result in convictions.

We find this contention without basis in fact or logic. Johnson's past criminal record reveals 10 felony convictions, many of which were for violent crimes and one of which was for attempted rape. Certainly, this bears out the characterization of his "jams" with police and his frequent appearances in jail. Moreover, Johnson was not sentenced to the maximum statutory term of 30 years' imprisonment but a lesser term of 15 years.

We find no abuse of discretion with respect to the trial court's findings following the hearing in mitigation and aggravation and accordingly affirm Johnson's 15-year sentence for aggravated criminal sexual assault. We also affirm his conviction of unlawful restraint and modified sentence of three years, to be served concurrently.

Affirmed as modified.

McMORROW, P.J., and JOHNSON, J., concur.