THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. CHARLES TIGNER, Defendant-Appellant.

First District (1st Division)   No. 1—87—3908

Opinion filed February 13, 1990.

Randolph N. Stone, Public Defender, of Chicago (Mark H. Kusatzky, Assistant Public Defender, of counsel), for appellant.

Cecil A. Partee, State's Attorney, of Chicago (Inge Fryklund, Kenneth T. McCurry, and Matthew Mahoney, Assistant State's Attorneys, of counsel), for the People.

JUSTICE CAMPBELL delivered the opinion of the court:

After a bench trial in the circuit court of Cook County, defendant was convicted of criminal sexual assault and robbery. (Ill. Rev. Stat. 1985, ch. 38, pars. 12—13(a)(1), 18—1(a).) He was sentenced to a term of 15 years' imprisonment for the criminal sexual assault conviction and a consecutive term of four years' imprisonment for the robbery conviction. Defendant appeals, contending that he was not proven guilty beyond a reasonable doubt. In the alternative defendant contends that he should be resentenced because his sentencing hearing was unfair and improper in that the trial court heard and considered improper evidence in aggravation and because he was improperly sentenced to extended term and consecutive sentences.

The complaining witness, M.M., age 23, testified that she left her apartment to go shopping about 11 a.m. on January 2, 1986. She took a bus to the intersection of Milwaukee and Division in Chicago, walked to a store where she made a purchase and then walked back to the bus stop to wait for the bus.

As complainant waited for the bus, she was approached by a man later identified as defendant. He asked her name and then asked if she wanted to "get high." After she responded in the negative, he asked her to go with him. When she again refused, he walked over to her, told her that he had a gun and partially exposed an object from his right jacket pocket which complainant thought was the grip of a gun. Because defendant also threatened to kill her if she did not do as he told her, she accompanied defendant and walked down the street with him arm in arm, as he instructed her to do.

They continued to walk together for about one mile until they arrived at an abandoned building. Defendant then instructed complainant to enter this building and go into the basement. Complainant cried and begged him to let her go, but he told her he would kill her if she refused. She then entered the basement of the building, where she found some old furniture and a bed. Defendant told her to pull down her slacks and panties and remove one leg. He then instructed her to sit on the edge of the bed. Defendant then knelt down on the floor between her legs. He kept his right hand inside the jacket pocket, where he had the gun he had shown her. He then licked her vagina for several minutes. After this he unzipped the front of his pants, removed his penis and placed it inside her vagina. After about five minutes complainant felt "something wet," and she believed defendant ejaculated. Defendant then got up and zipped up his pants.

When defendant had finished, he instructed complainant to remove her pants and panties and he asked her for money. She told him that she had none, and he responded that she was lying. He then searched her pants pockets and, finding nothing, instructed her to remove her boots and her socks. When he still did not find any money, he told her to empty her coat pockets. These, too, were empty so he told her to unfasten her coat and her blouse. He placed his hand inside her bra in search of money. When the money that was hidden there fell out, he took the money, except for one dollar, which he left for her bus fare. He then hid her clothing and told her to count to 20 before she started searching for her clothes. Defendant then left the building.

Complainant found all of her clothing except her panties. She dressed, left the building, and went to a nearby store where she

called the police to report what had happened. After the police arrived and spoke with her, they returned with her to the abandoned building so that she could identify the building and the basement area where she had been taken. Complainant was then taken to the hospital, where she was examined. In court complainant identified some photographs which were taken by the police depicting the abandoned building and the basement area within.

Complainant further testified that on November 19, 1986, she was shopping with friends on Milwaukee Avenue near Wolcott. As she was walking in this area, she heard a man yell, "Hey slim, want to get high?" Complainant turned and recognized defendant. She then quickly turned her head and immediately entered a store, where she asked to use the telephone. The store clerk refused to allow her to use the telephone but directed her to a nearby public telephone. Complainant left the store after she waited for defendant to pass by the area and walked toward the public telephone. Just then she saw a police car and flagged down the officers. She informed the police that she had been raped in January of that year and then pointed out defendant as the man who had been her attacker. The officers approached defendant and arrested him. When defendant was inside the police car, complainant positively identified defendant as the man who had attacked her in January.

It was later stipulated that complainant was examined at the hospital by Nurse Kathleen Shanahan and Dr. Gonzales and that samples were taken for a Vitullo Kit. It was also stipulated that Christine Anderson of the Chicago police crime lab received these samples through a proper chain of custody and that she would testify that the samples tested positive for the presence of sperm. Finally, Officer Vincent Mancini testified in corroboration of complainant's testimony that about 2 p.m. on November 19, 1986, he was flagged down while on routine patrol in the area of 1400 North Milwaukee Avenue in Chicago and that as a result of the information provided to him by complainant, defendant was arrested.

Defendant presented the testimony of Ed Matthews, an investigator for the public defender's office. He testified that on August 3, 1987, he and another investigator, along with defense counsel, went to 630 West Evergreen Street to interview the complainant. After they identified themselves, she agreed to talk with them. She then told them that defendant had approached her as she waited for a bus at the bus stop and that defendant told her that he had a gun but that she only saw what appeared to be the handle of a gun. They then walked arm in arm for several blocks until they reached an

abandoned building. Inside this building defendant told her to take down her pants. Matthews testified that complainant then indicated that defendant performed oral sex but did not have intercourse because he could not get an erection. After this defendant told her to count to 20 and then left the building.

After hearing argument the trial court found defendant guilty of criminal sexual assault based on contact between defendant's mouth and the victim's vagina. The court found defendant not guilty of all other charges, including the counts alleging aggravated criminal sexual assault, aggravated kidnapping and aggravated unlawful restraint, having found that there was no proof beyond a reasonable doubt that defendant had carried a gun. The trial court also found defendant not guilty of armed robbery for this reason, but found defendant guilty of the lesser-included offense of robbery.

At the subsequent sentencing hearing the trial court ruled admissible, over defendant's objection, the testimony of six witnesses. Three of these witnesses were Chicago police officers who testified regarding the circumstances surrounding four of defendant's prior arrests for solicitation. One witness, Stephanie Barnett, was defendant's ex-girlfriend, who testified concerning the circumstances leading up to defendant's arrest for indecent liberties with a child, a charge to which defendant later pleaded guilty. Barnett also testified regarding defendant's violation of the condition of his probation that he not have contact with her or her children. Specifically, she testified that she called the police to have defendant arrested on September 29, 1984, and on December 25, 1984, when he entered her residence without her permission. On both occasions defendant and Barnett engaged in physical altercations which resulted in injury to Barnett.

Finally, two other Chicago police officers testified that when they responded to Barnett's residence they attempted to arrest defendant, that defendant resisted arrest and tried to escape and that defendant fought with the officers. Furthermore, on December 25, 1984, when defendant resisted arrest, he caused physical injury to several police officers.

Certified copies of defendant's prior convictions for indecent liberties and battery were admitted along with the presentence investigation report. No evidence in mitigation was offered. The trial court then found defendant eligible for an extended term and consecutive sentences and sentenced defendant to a term of 15 years for the criminal sexual assault conviction and a term of four years for the robbery conviction, to be served consecutively.

The first issue on appeal is whether the complaining witness' testimony was sufficient to have proven defendant guilty of the offenses for which he was convicted beyond a reasonable doubt. Defendant contends that his acquittal on the counts charging him with aggravated criminal sexual assault, aggravated kidnapping, aggravated unlawful restraint, and criminal sexual assault based on penile penetration indicated that the complaining witness was not credible and, therefore, he should have been acquitted of all charges. We cannot agree.

■ The trial court explicitly found the complaining witness to be credible. It is the duty of the trier of fact to assess the credibility of the witnesses, weigh the evidence and resolve any conflicts in the testimony. (*People v. Akis* (1976), 63 Ill. 2d 296, 347 N.E.2d 733.) Having had the opportunity to view the witnesses, the trial court is in a much better position to make the credibility assessment, and the trial court's decision will not be disturbed unless the evidence is so palpably improbable or unsatisfactory that a reasonable doubt as to defendant's guilt exists. *People v. Ellis* (1978), 74 Ill. 2d 489, 384 N.E.2d 331.

■ In the present case the complaining witness testified clearly and convincingly regarding her encounter with defendant and the subsequent sexual assault. The complaining witness also candidly admitted that she never saw the gun that defendant indicated that he was carrying, but that she saw a handle of what she believed to be a gun. The evidence presented by defendant did not impeach the complaining witness regarding these matters, but rather, corroborated much of her testimony. The testimony admitted by defendant raised a conflict only on the issue of penile penetration. The mere fact that the trial court resolved this conflict in favor of defendant does not, in our mind, diminish the credibility of the complaining witness. Nor does the fact that the trial court chose to give defendant the benefit of the doubt on the issue of the presence of a weapon in any way affect our assessment of the sufficiency of the evidence supporting defendant's conviction for criminal sexual assault and robbery. Because we agree with the trial court that the complaining witness was credible and that her testimony was clear and convincing, her testimony was sufficient to support defendant's convictions beyond a reasonable doubt and so we affirm. *People v. Johnson* (1987), 161 Ill. App. 3d 551, 515 N.E.2d 137.

Having affirmed defendant's convictions, we must address defendant's second issue and determine whether his sentencing hearing was conducted properly and whether an extended term and con-

secutive sentences were properly imposed. The first question is whether defendant received a fair sentencing hearing. Defendant challenges the admission of the testimony of five witnesses because they testified to "mere arrests" as opposed to convictions. Defendant also contends that this testimony was unreliable because it "painted a distorted picture" of him as a sexual pervert.

■■ It has long been held that a sentencing judge will be given wide latitude in his discretionary determination of the types and sources of evidence that may be admitted to assist him in determining the kind and extent of punishment to be imposed within the statutory limits. (*People v. Foster* (1987), 119 Ill. 2d 69, 96, 518 N.E.2d 82; *People v. Adkins* (1968), 41 Ill. 2d 297, 300, 242 N.E.2d 258.) The only requirement for admission is that the evidence be reliable and relevant, and this is a decision left to the discretion of the sentencing court. (*People v. Lyles* (1985), 106 Ill. 2d 373, 414, 478 N.E.2d 291.) Evidence of other crimes with which defendant has been charged but not convicted is admissible, especially when the testimony concerning such criminal activity or misconduct is trustworthy and subject to cross-examination. (*People v. Johnson* (1989), 128 Ill. 2d 253, 284, 538 N.E.2d 1118; *People v. Sanchez* (1986), 115 Ill. 2d 238, 503 N.E.2d 277; *People v. La Pointe* (1981), 88 Ill. 2d 482, 498-99, 431 N.E.2d 344.) The relaxation of the formal rules of evidence at the sentencing stage is intended to provide the sentencing judge with a wide range of information concerning the defendant's life, character, criminal history and propensity to continue to commit other offenses. (*People v. Johnson* (1989), 128 Ill. 2d 253, 538 N.E.2d 1118; *People v. Sanchez* (1986), 115 Ill. 2d 238, 503 N.E.2d 277.) Even hearsay evidence is not *per se* inadmissible at a sentencing hearing. (*People v. Foster* (1987), 119 Ill. 2d 69, 98, 518 N.E.2d 82; *People v. Hall* (1986), 114 Ill. 2d 376, 417, 499 N.E.2d 1335; *People v. Perez* (1985), 108 Ill. 2d 70, 86-87, 483 N.E.2d 250.) A hearsay objection will go to the weight and not the admissibility. (*People v. Foster*, 119 Ill. 2d at 98.) Double hearsay, however, should be corroborated, at least in part, by other evidence. *People v. Foster*, 119 Ill. 2d at 98.

■■ In the present case the evidence of other criminal misconduct which did not result in conviction was properly admitted. The arresting officers testified and were subject to cross-examination. The evidence was trustworthy and provided some insight into defendant's life, character and criminal propensities. As such it was relevant and reliable and, thus, properly admitted and considered by the sentencing judge.

■■ The testimony of Barnett concerning her daughter's state-

ments to her about defendant's sexual misconduct, although hearsay, was corroborated in part by the certified copy of defendant's conviction for the offense of indecent liberties with a child. There was no error in its admission. In conclusion, defendant received a fair sentencing hearing at which proper evidence in aggravation was received.

We now consider whether defendant was eligible for an extended-term sentence and consecutive sentences as the trial court held. At the time of defendant's sentencing in December 1987, the statute provided:

"[T]he following factors may be considered by the court as reasons to impose an extended term sentence under Section 5—8—2 upon any offender who was at least 17 years old on the date the crime was committed:

(1) When a defendant is convicted of any felony, after having been previously convicted in Illinois of the same or greater class felony, within 10 years, excluding time spent in custody, and such charges are separately brought and tried and arise out of different series of acts." Ill. Rev. Stat. 1985, ch. 38, par. 1005—5—3.2(b).

Defendant was convicted of a Class 1 felony of indecent liberties with a child on August 3, 1983. This conviction was within 10 years of his present conviction for a criminal sexual assault, another Class 1 felony. Accordingly, defendant was eligible for an extended term.

Although defendant apparently does not dispute this conviction or the fact that he was eligible for an extended term within the language of the statute, defendant contends that an extended term was improperly imposed because the sentencing judge relied on improperly admitted evidence. There are two reasons that we reject defendant's argument. First, although the trial court found that defendant was eligible for an extended-term sentence, it sentenced defendant to a term of 15 years' imprisonment, which is the maximum normal sentence within the range for sentencing for a Class 1 felony. Thus, although the trial court correctly determined that defendant was eligible for an extended-term sentence, the actual sentence imposed did not exceed the statutory range for the conviction. Thus, technically defendant was not sentenced to an extended-term sentence. Secondly, we found earlier that all the evidence presented at the sentencing hearing was properly admitted and, therefore, the sentence, whether it is considered an extended term or not, could not have been imposed in reliance on improperly admitted evidence.

The last issue is whether consecutive sentencing was availa-

ble and appropriate in this case. Whether consecutive or concurrent sentences should be imposed is a determination left to the sound discretion of the court, as long as the decision does not conflict with the statutory regulations concerning the imposition of such sentences. Section 5—8—4 of the Unified Code of Corrections (Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—4) sets forth the applicable authority with regard to consecutive sentencing. It states:

> "(a) When multiple sentences of imprisonment are imposed on a defendant at the same time, or when a term of imprisonment is imposed on a defendant who is already subject to sentence in this State or in another state, or for a sentence imposed by any district court of the United States, the sentences shall run concurrently or consecutively as determined by the court. *** The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was no substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury, in which event the court may enter sentences to run consecutively. Sentences shall run concurrently unless otherwise specified by the court.
>
> (b) The court shall not impose a consecutive sentence unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." Ill. Rev. Stat. 1985, ch. 38, par. 1005—8—4.

Defendant argues that consecutive sentences were improperly imposed in this instance because the criminal sexual assault and robbery were part of the same course of conduct and that there was no substantial change in the nature of the criminal objective. Defendant also contends that his background and character did not warrant a finding that consecutive terms of imprisonment were necessary to protect the public from future criminal conduct. We disagree with defendant's position and find that the trial court's imposition of consecutive terms of imprisonment was proper.

When consecutive sentences are imposed pursuant to law and supported by the record, they will not be disturbed on review. (*People v. Holland* (1987), 121 Ill. 2d 136, 520 N.E.2d 270; *People v. Steppan* (1985), 105 Ill. 2d 310, 473 N.E.2d 1300.) In the present

case the State argued in favor of consecutive sentences at the sentencing hearing, stating that the criminal sexual assault and robbery were two separate and distinct courses of conduct and that society needed to be protected from defendant based upon his criminal background and character. The trial court later stated that it considered all the facts and circumstances of the case at bar and the defendant's background and found that defendant was eligible to be sentenced to consecutive terms and that this was appropriate in this case. We find ample support in the record for this determination.

■■ The record shows that the criminal sexual assault and subsequent robbery were two separate courses of action. The complaining witness testified that defendant approached her and forced her to accompany him to an abandoned building. His objective at that time was clearly to engage in the criminal sexual assault. It was not until he completed this objective that he demanded money from the victim and caused her to undress so he could search for her hidden cash. Furthermore, the extensive testimony concerning defendant's prior criminal conduct demonstrated clearly that consecutive sentencing was appropriate in this instance since society would be better protected from defendant's future criminal conduct. Thus, we find that the imposition of consecutive sentences in this case was proper. See *People v. Holland* (1987), 121 Ill. 2d 136, 520 N.E.2d 270; *People v. Rose* (1979), 75 Ill. App. 3d 45, 393 N.E.2d 698.

The judgment of the circuit court of Cook County is affirmed. In addition, pursuant to *People v. Nicholls* (1978), 71 Ill. 2d 166, 374 N.E.2d 194, we assess defendant $50 as costs for this appeal.

Judgment affirmed.

BUCKLEY, P.J., and O'CONNOR, J., concur.