THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. PLACIDO LABOY, Defendant-Appellant.

First District (5th Division)   No. 1—89—1172

Opinion filed March 20, 1992.

Michael J. Pelletier and Marc Davidson, both of State Appellate Defender's Office, of Chicago, for appellant.

Jack O'Malley, State's Attorney, of Chicago (Renee Goldfarb, Walter P. Hehner, and John Guinn, Assistant State's Attorneys, of counsel), for the People.

JUSTICE MURRAY delivered the opinion of the court:

Defendant, Placido Laboy (Laboy), was charged by indictment with the offenses of armed robbery (Ill. Rev. Stat. 1987, ch. 38, par. 18–2(a)) and attempted aggravated criminal sexual assault (Ill. Rev. Stat. 1987, ch. 38, pars. 8–4, 12–14(a)(1)). After a jury trial Laboy was found guilty of both offenses. Thereafter, Laboy was sentenced to consecutive sentences of 60 years' imprisonment for armed robbery and 15 years for attempted aggravated criminal sexual assault.

On appeal Laboy presents the following issues for review: (1) whether his conviction must be reversed and the cause remanded for a new trial where the trial court's findings that Detective Zuley did not commit perjury at Laboy's trial, and that the disputed testimony did not affect the outcome, were against the manifest weight of the evidence; (2) whether Laboy's consecutive sentences should be modified to run concurrently; and (3) whether the consecutive sentences must be vacated and the sentence reduced or the cause remanded for resentencing because the trial court erroneously found that the complainant suffered serious physical harm and improperly relied on factors inherent in the offenses.

The case of *Laboy v. Zuley* (N.D. Ill. 1990), 747 F. Supp. 1284, is currently pending in the Federal district court. That action is a civil rights case involving the issue of the perjury. On March 25, 1991, this court entered a rule to show cause why this case should not be stayed pending a resolution of the perjury issue in the Federal case. Both the State's Attorney's office and the State appellate defender's office have filed responses to the rule suggesting that this court should not delay a ruling in this case. We agree.

M.H. testified that at approximately 3:30 a.m., she and her boyfriend, Chris, were walking through Horner Park when they were approached by an armed man, wearing a bandana which covered his face from the nose down. Chris dropped to the ground, and pulled

down M.H.'s leg so she would kneel as well. The man said he wanted their money. They told the man that they did not have any money, but that M.H. did have a gold chain. The man ripped the chain off her neck, pulled her up, put the gun to her head, and pulled her away.

Chris testified that the gunman said, "I'm going to take your lady." Chris saw the assailant walking off into the darkness with his arm around M.H. and a gun to her head. As the assailant dragged M.H. away, Chris heard M.H. scream, "Christopher, help me. Help me."

The gunman told M.H. if Chris moved, he would kill her. He continued to tell her not to look at his face. At trial, M.H. testified that the assailant was about 5 feet 5 inches tall, he weighed 150 to 160 pounds, and his nationality was "white hispanic."

The man took M.H. across the street and went about a block to his waiting car. He pushed her into the car by her head. The assailant then put his knee on her head, closed the door, and hit her on the head with the gun five or six times. He threatened to kill her if she moved. The offender then laid the gun flat against her face and drove off.

When they arrived at Irving Park Road, the assailant told M.H. to "suck his dick." He had removed his penis from his pants and tried to push her head towards his pants. M.H. jerked her head up and screamed. She was able to see the assailant's uncovered face since he was no longer wearing the bandana. M.H. noticed that he had an indentation between his eyes, a beard and a mustache. After describing the assailant's features to the court, the victim identified Laboy as the offender.

Laboy drove faster, but then started to slow down. He then pulled her up, stuck the gun in her side, and told her to shut up and look straight ahead. M.H. saw a Chicago police department paddywagon. She specifically testified:

"He was really angry now. He slammed my head back down to the console. The car was going faster and faster. I got very frightened. He was pressing the gun harder and harder to my head, so I pushed down his hand and he started swinging at me. I had my head lifted and was staring at him. He was trying to reach for me. I grabbed for the door and I had the door open. One of my feet was out the door. He grabbed hold of me. I look [sic] at him one last time. I pushed his hand up in the air and I jumped from the car. *** I rolled for quite a distance, and when I stopped rolling, I was very bloody. I got up and tried to run. I was screaming."

Detective Zuley testified that he interviewed the victim briefly at the police station after the incident. She described the offender as male Hispanic, medium complexion, 5 feet 5 inches tall, approximately 150 pounds, 26 years old, and having facial hair. Detective Zuley was in possession of the car keys and a gold chain found in the car identified by the victim.

The vehicle's license tags were registered to Placido Laboy and registered to an address at 4709 North Beacon Street. After the police found that the address was no longer valid, they discovered a number of traffic tickets in the car, all issued from the 4400 block of Paulina. They were able to find the defendant's last name at 4407 North Paulina by looking at the mailboxes and doorways up and down the block. The police were unable to find Laboy there at about 5:30 or 6 a.m. Later, at approximately 7 a.m. they returned with the keys recovered from the car.

At approximately 7 a.m. Detective Zuley saw a man fitting the description of the offender that was given by M.H., walking behind the building. The officers followed that person, watched him go up to the rear, then up to the front of the apartment at 4407 North Paulina, and then heard him go to the back door. The person tapped at the back door and whispered, "Let me in." At that point, the officers approached him, identified themselves, asked him who he was, and, upon learning that he was Placido Laboy, took him into custody. At that time, Detective Zuley tried the key on the keyring to the lock of that apartment and found that it opened the door.

Detective Zuley took Laboy back to the police station and placed him in a lineup. Chris went into the room to view the lineup first and was unable to identify the offender. According to Detective Zuley, as Laboy approached the viewing window during M.H.'s viewing of the lineup, M.H. grabbed onto him and hugged him. M.H. was told not to identify her assailant until all the suspects had gone through the procedure. After viewing the subjects in the second portion of the lineup where the suspects all wore masks to cover the lower part of their faces, M.H. identified Laboy as the offender. The curtains in the viewing room were then closed, the subjects spoke, and M.H. identified the voice of Laboy as the voice of the offender. According to Detective Zuley when M.H. heard Laboy's voice she began to tremble.

Detective Zuley testified that after M.H. identified Laboy, he recovered Laboy's pants in order to look for M.H.'s hair. After recovering the pants, Detective Zuley noticed blonde hairs in the teeth of the zipper and stuck in the corner of the pocket. Detective Zuley placed the pants in a sealed plastic bag and sent it to the crime lab. He then

plucked some hairs from M.H.'s head, sealed those in a separated envelope, and submitted it to the crime lab.

The jury found Laboy guilty of armed robbery and attempted aggravated criminal sexual assault. In addition to trial counsel's motion for new trial, Laboy filed a *pro se* motion for judgment of acquittal notwithstanding the verdict, or in the alternative, for new trial. Subsequently, Laboy filed a complaint against trial counsel with the Attorney Registration and Disciplinary Commission. Laboy also filed a *pro se* motion to supplement, and a motion for attachment of exhibits to the motion for judgment of acquittal notwithstanding the verdict, or in the alternative, for new trial. The public defender's office was appointed to represent Laboy in his post-trial motions and at sentencing.

Among the contentions addressed at the hearing on the motions were: (1) Laboy was not proven guilty beyond a reasonable doubt; (2) trial counsel was ineffective for failing to investigate the case and an available alibi; (3) trial counsel was ineffective for failing to argue pretrial suppression motions that had been previously filed by the assistant public defender and the defendant; (4) Detective Zuley perjured himself at trial, thus depriving Laboy of a fair trial; and (5) Detective Zuley's testimony at the evidentiary hearing constituted newly discovered evidence requiring a new trial.

At the post-trial evidentiary hearing, in addressing whether trial counsel was ineffective, the court entertained the motions that had been filed, including the motion to suppress testimony concerning the lineup identifications, and motion to quash the arrest and suppress evidence on the basis of a failure of probable cause to arrest. Laboy, Jeanette Laboy (his mother), and Frances Richko (his sister) testified on behalf of the defense, and Detective Zuley and Marshall Weinberg (Laboy's trial counsel) testified for the State.

The trial court denied Laboy's motions, finding that the lineup was not unnecessarily suggestive and that there was probable cause to arrest him. The trial court also found that Laboy and his alleged alibi witnesses (Jeanette Laboy and Frances Richko) were unbelievable, that there was insufficient evidence to indicate that Mr. Weinberg failed to adequately investigate the case or present an available alibi, and that there was no merit to the motions which were not argued before trial.

After Detective Zuley testified, Laboy made a motion to amend his petition arguing that the detective's testimony at trial was perjured since it was contradictory to his post-trial testimony. Detective Zuley's testimony at trial concerning (1) information he had about the

offender when he arrested Laboy; (2) whether or not he had taken Laboy's pants before Laboy was placed in the lineup and then returned them to him for the lineup; and (3) whether he kept an extra separate set of hairs found on Laboy's pants and sent them separately to the crime lab differed from his testimony at the evidentiary hearing. The trial judge stated that he would not automatically assume there was perjury because someone said something different at the post-trial hearing than he said at trial. According to the trial judge, the inconsistencies in the detective's testimony could be error, or could be perjury, but all of these things dealt with credibility and believability of the witness which the court took into consideration.

Laboy was sentenced to 15 years' imprisonment for attempted aggravated criminal sexual assault and an extended term of 60 years for armed robbery, both sentences to run consecutively.

For the following reasons, we remand the matter to the trial court for an evidentiary hearing.

## I

Laboy argues that his conviction must be reversed and the cause remanded for a new trial because the trial court's findings that Detective Zuley did not commit perjury at the trial and that the disputed testimony did not affect the outcome were against the manifest weight of the evidence. The State concedes there were inconsistencies in Detective Zuley's testimony, but maintains that these inconsistencies fall short of establishing perjury.

At trial Detective Zuley testified to the following. On July 10, 1987, he interviewed the complainant and she described the offender as male Hispanic, medium complexion, 5 feet 5 inches tall, approximately 150 pounds, 26 years old, and having facial hair. Later that day at approximately 7 a.m., he and other officers were at 4407 North Paulina and they saw a male white Hispanic who fit the description given by M.H. walking into the alley behind the building. That person was Laboy, and they arrested him.

Later that afternoon a lineup was conducted which included Laboy. After Laboy was identified, Detective Zuley removed Laboy's pants for the purposes of finding strands of M.H.'s hair. Detective Zuley noticed blonde hairs in the zipper and pocket so he sealed the pants in a plastic bag and sent it to the crime lab. He then plucked hairs from M.H.'s head, sealed those in a separate envelope and submitted those to the crime lab for analysis and comparison with the hairs on the pants.

On cross-examination, it was established that Detective Zuley made up a police report in the case and nowhere in his report did he state that the person who committed the offense had facial hair. He restated that he took Laboy's pants after he was identified. He specifically denied taking the pants before the lineup and returning them to Laboy for the lineup.

Mary Pulling, a forensic scientist for the Chicago police department, testified at trial. She received two sealed packages: one contained the defendant's pants and the other contained a sample of the victim's hair. Ms. Pulling determined that the hair removed from the pants exhibited characteristics consistent with M.H.'s hair.

At the hearing on Laboy's post-trial motions, Laboy testified that prior to the lineup, Detective Zuley took his pants from him and then later came back and returned them. The officer stated, "We found hairs on your pants." In his pretrial and post-trial motions Mr. Laboy alleged that the complainant's hair was planted on his pants.

At the post-trial hearing, Detective Zuley testified for the State. Detective Zuley testified that when he approached Laboy on July 10 the description of the offender that he possessed did not mention facial hair. Laboy was followed because there was nobody else out there to follow and the way he was going up the alley in the direction he was going made Detective Zuley curious as to where he was going.

Detective Zuley also testified that at the police station, prior to the lineup, he took Laboy's pants and went outside the interview room. After he took the pants from Laboy, Detective Zuley looked at them with a magnifying glass and found hair. At that point he took the hairs off the pants because he had to return the pants to Laboy for him to wear during the lineup. After the lineup Detective Zuley took the pants away from Laboy again in order to submit the pants to the crime lab for analysis.

Due to the discrepancies in Detective Zuley's testimony at trial and at the hearing, defense counsel argued to the court that Zuley's testimony at trial constituted perjury, and therefore Laboy was denied due process and a fair trial. In denying defense counsel's motion for new trial, the trial court stated:

"It could be perjury, yes. It could be planted, yes. And I think if so, he should be indicted. It could be in error. His thought process is jogged at this point. I don't know why he would get on the stand at this point and tell a story that's totally different from other [sic] and put himself in that position where he could have easily told the original story. All of these things deal

with the credibility and the believability of that particular witness which the Court will consider."

Later the trial court again denied defense counsel's motion stating:

"The defense brought out some inconsistent testimony of the police officer. It was indeed inconsistent. Why, I don't know. It concerned the hairs on his pants which is a part of the evidence during the trial. Whether or not it was a crucial part of the trial, I am not certain. I don't think it would have made any difference one way are [sic] the other, whether they had the hair or they didn't have the hair. Why the testimony is inconsistent, I don't know. There is no reason for the officer to deliberately testify today inconsistently with his testimony before. So the only thing I can really attribute it to, certainly no one would outwardly commit perjury on two separate transcripts. I take it that he made an error. Whether the error was in the first testimony or the second testimony, I am not certain. But I don't think it—I think it didn't effect [sic] the outcome of the case in anyway [sic] whatsoever in my opinion."

The inconsistencies in the detective's stories regarding the hairs are the basis of Laboy's charge of perjury. As disclosed in the trial court's rulings quoted above, the trial court concluded that the conflicts in the detective's testimony could be errors or perjury but that all those things dealt with credibility and believability. However, perjury does not deal with inconsistency, it deals with falsity. Perjury is defined in Illinois law as:

"A person commits perjury when, under oath or affirmation, in a proceeding or in any other matter where by law such oath or affirmation is required, he makes a false statement, material to the issue or point in question, which he does not believe to be true." Ill. Rev. Stat. 1987, ch. 38, par. 32—2(a).

■ The key element in this case is the materiality of the detective's testimony concerning his alleged recovery of the hairs allegedly found in Laboy's pants. The State claims the inconsistencies in the detective's story "fall short of establishing perjury," arguing that "[i]t is farfetched to believe that a witness would knowingly prejudice himself at two separate proceedings when there was no plausible reason to lie." However, whether or not an individual has a reason to lie is not part of the definition of perjury. A witness, whether sworn or affirmed, is obligated to tell the truth; whether or not he has a reason to lie is irrelevant.

It has long been recognized that the deprivation of an individual's liberty based upon false testimony is contrary to the basic principles

in a civilized society. (*People v. Cornille* (1983), 95 Ill. 2d 497, 509, 448 N.E.2d 857, 863.) Although there is nothing in this record to indicate that the prosecutor had any knowledge of the falsity in the witness' testimony, its falsity need not have been known personally by the prosecutor in order for there to have been a knowing use and a constitutional violation. (*People v. Cihlar* (1986), 111 Ill. 2d 212, 219, 489 N.E.2d 859, 862.) Moreover, "the prosecution is charged with the knowledge of its agents including the police." *People v. Martin* (1970), 46 Ill. 2d 565, 567, 264 N.E.2d 147.

Adequate evidence to support a finding of defendant's guilt beyond a reasonable doubt was presented at trial. Yet, without the hair allegedly recovered from Laboy's pants which also allegedly matched M.H.'s hair, the case involved issues of identification and credibility. Even the prosecution recognized the relevancy of the evidence by referring to it on more than one occasion in his closing argument at trial.

In *People v. Henderson* (1976), 36 Ill. App. 3d 355, 384, 344 N.E.2d 239, this court stated:

"The knowing use of false testimony by the prosecution to procure a conviction does constitute a denial of due process. [Citation.] However, for false testimony to constitute perjury, that testimony must have been material to defendant's guilt or innocence. [Citation.] Mere conflicts in the testimony of a witness with prior statements made by him does not establish that the witness has given perjured testimony. [Citation.]"

However, "[o]nce the defendant establishes the condemned use of false testimony, he is entitled to a new trial unless the State can establish beyond a reasonable doubt that the false testimony was immaterial in that it did not contribute to the conviction." *People v. Cornille* (1983), 95 Ill. 2d 497, 514, 448 N.E.2d 857, 866.

Based upon this record, this court is unable to determine whether the police officer committed perjury. Accordingly, we remand the case to the trial court solely for the purpose of an evidentiary hearing on the issue of whether or not Detective Zuley committed perjury. Should the trial court find that there was no perjury, Laboy's convictions should be affirmed. However, if the trial court finds that the officer in fact perjured himself, Laboy should be accorded a new trial.

## II

If the trial court determines that Detective Zuley did not commit perjury, we find that for the following reasons Laboy's sentences should be affirmed.

Laboy was sentenced to 15 years for attempted aggravated criminal sexual assault and an extended term of 60 years for armed robbery, the terms to run consecutively.

As long as the decision does not conflict with the statutory regulations concerning the imposition of such sentences, the decision whether to impose consecutive or concurrent sentences is a determination left to the sound discretion of the trial court. (*People v. Tigner* (1990), 194 Ill. App. 3d 600, 609, 551 N.E.2d 304.) At the time Laboy was sentenced, section 5—8—4 of the Unified Code of Corrections provided in relevant part:

"(a) *** The court shall not impose consecutive sentences for offenses which were committed as part of a single course of conduct during which there was a substantial change in the nature of the criminal objective, unless, one of the offenses for which defendant was convicted was a Class X or Class 1 felony and the defendant inflicted severe bodily injury ***, in which event the court may enter sentences to run consecutively. Sentences shall run concurrently unless otherwise specified by the court.

(b) The court shall not impose a consecutive sentence *** unless, having regard to the nature and circumstances of the offense and the history and character of the defendant, it is of the opinion that such a term is required to protect the public from further criminal conduct by the defendant, the basis for which the court shall set forth in the record." Ill. Rev. Stat. 1987, ch. 38, pars. 1005—8—4(a), (b).

■ Laboy argues that the imposition of consecutive sentences was an abuse of discretion because the incident concerned a single course of conduct during which there was no substantial change in the nature of the criminal objective, and the complainant did not suffer severe bodily injury. The State maintains that the consecutive sentences should be affirmed since the trial judge correctly found that there was a substantial change in the defendant's criminal objective during his criminal conduct, and the term was required to protect the public from future criminal activities by the defendant. In addition, the victim did suffer severe bodily harm. We disagree with defendant's position and find that the trial court's imposition of consecutive terms of imprisonment was proper.

The trial court is in the best position to tailor a sentence to the facts and needs of the case. (*People v. Steppan* (1985), 105 Ill. 2d 310, 323, 473 N.E.2d 1300; *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882.) A trial court's decision with regard to sentencing is

entitled to great deference, and absent an abuse of discretion, a reviewing court should not substitute its judgment for that of the trial court. (*Steppan*, 105 Ill. 2d at 323; *Perruquet*, 68 Ill. 2d at 154.) Although the victim is the same, and the time span is short, if the various offenses are distinct, multiple sentences are appropriate. *People v. Malcom* (1973), 14 Ill. App. 3d 378, 302 N.E.2d 352, 357.

During Laboy's sentencing the trial court specifically stated:

"In addition, the Court has considered the facts of his case. And after you committed your armed robbery, then your entire course of conduct changed.

At this point, okay, I have completed the robbery and now I am going to take this young lady and now I am going to rape her. That's a separate and distinct crime and perhaps unquestionably worse than a crime of armed robbery, absolutely worse. No excuse for it. And it takes a wild animal to commit that kind of a crime.

The public must be protected from you, sir. And I am going to sentence you to the sum of 15 years. And because the public needs protection and because of the separate and distinct crime, it will be consecutive to the 60 years. I am sentencing you to a total of 75 years."

In *Tigner* this court stated: "When consecutive sentences are imposed pursuant to law and supported by the record, they will not be disturbed on review." (*People v. Tigner* (1990), 194 Ill. App. 3d 600, 609, 551 N.E.2d 304, citing *People v. Holland* (1987), 121 Ill. 2d 136, 520 N.E.2d 270; *People v. Steppan* (1985), 105 Ill. 2d 310, 473 N.E.2d 1300.) We find ample support in the record for the trial court's determination that consecutive sentences were appropriate. Laboy approached M.H. and her boyfriend with a gun and demanded their money. Laboy got really angry about the fact that Chris and M.H. did not have any money so Chris told him he could check his pockets. Subsequently, M.H. remembered that she had a gold chain and offered that to Laboy. Laboy then ripped the gold chain from her neck. Once the robbery was completed, Laboy abducted M.H. and attempted to commit aggravated criminal sexual assault. The record shows that the robbery and the subsequent attempted criminal sexual assault were two separate courses of action. It was not until Laboy completed his attempt to rob M.H. and her boyfriend that his conduct changed.

The trial court found both that the crimes were separate and distinct and that the imposition of consecutive terms was necessary to protect the public from the defendant. We agree with the trial court's

decision and affirm the decision to impose consecutive sentences in this case.

## III

Due to an armed robbery conviction in 1980, Laboy was eligible for an extended-term sentence for his armed robbery conviction under section 5—5—3.2(b)(1) (Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(b)(1)). Laboy argues that the trial court's imposition of the maximum 60-year extended-term sentence for armed robbery and regular maximum 15-year sentence for attempted aggravated criminal sexual assault was improper where it erroneously found that the complainant suffered serious physical harm, and improperly relied on the fact that the offender intended to sexually assault the complainant, that the robbery posed a threat of serious harm, and that the offender displayed and threatened to use a dangerous weapon during the attempted aggravated criminal sexual assault, all factors inherent in the offenses.

The State maintains that the extended-term sentence for armed robbery was appropriate since the defendant had previously been convicted of the same felony, within the past 10 years, in addition to causing the victim serious bodily harm. In addition the State maintains that the 15-year sentence for attempted aggravated criminal sexual assault was appropriate since the victim suffered serious bodily harm and had a criminal history. Furthermore, the court considered other relevant factors which were not inherent in the offenses.

At the time of defendant's sentencing, the applicable statute provided:

> "[T]he following factors may be considered by the court as reasons to impose an extended term sentence under Section 5—8—2 upon any offender who was at least 17 years old on the date the crime was committed:
>
> (1) When a defendant is convicted of any felony, after having been previously convicted in Illinois of the same or greater class felony, within 10 years, excluding time spent in custody, and such charges are separately brought and tried and arise out of different series of acts." Ill. Rev. Stat. 1987, ch. 38, par. 1005—5—3.2(b)(1).

The State introduced two certified copies of Laboy's conviction record at the sentencing hearing. The trial court stated that it would only consider convictions, and not arrests without convictions. On May 23, 1979, the defendant pled guilty to robbery and was sentenced to three years' felony probation. On August 26, 1980, the defendant

pled guilty to armed robbery and was sentenced to seven years in the Illinois Department of Corrections. The State asked that Laboy be sentenced to an extended term for armed robbery under section 5—3—2 since he was convicted of the same class of felony within 10 years.

■ The trial court sentenced the defendant to a 60-year extended term for armed robbery. A trial court's decision with regard to sentencing is entitled to great deference, and a reviewing court cannot substitute its judgment for that of the trial court unless there has been an abuse of discretion. (*People v. Steppan* (1985), 105 Ill. 2d 310, 323, 473 N.E.2d 1300; *People v. Perruquet* (1977), 68 Ill. 2d 149, 154, 368 N.E.2d 882.) The trial court properly sentenced the defendant to an extended term for armed robbery since he had previously pled guilty to armed robbery within 10 years. (See *People v. Tigner* (1990), 194 Ill. App. 3d 600, 608, 551 N.E.2d 304.) Accordingly, we affirm the decision of the trial court to impose a 60-year extended-term sentence for armed robbery.

The State also maintains that Laboy's 15-year sentence for attempted aggravated criminal sexual assault was appropriate since the defendant's conduct caused serious bodily harm and he threatened even greater harm. In addition, the State maintains that the trial court considered other relevant factors beyond those inherent in the offenses.

The Illinois Supreme Court has stated:

> "While the classification of a crime determines the sentencing range, the severity of the sentence depends upon the *degree of harm* caused to the victim and as such may be considered as an aggravating factor in determining the exact length of a particular sentence, *even in cases where serious bodily harm is arguably implicit in the offense for which a defendant is convicted.* [Citations.]" (Emphasis in original.) *People v. Saldivar* (1986), 113 Ill. 2d 256, 269, 497 N.E.2d 1138, 1143.

■ Laboy argues that in this case the record shows that M.H. did not suffer serious harm from the offenses. Laboy maintains, "although once they were in the car the offender hit M.H. several times in the head with his gun, and then moments later M.H. jumped from the offender's moving car, there was no evidence presented to indicate that M.H. suffered serious physical injury." Laboy further points out that there was no evidence to suggest that M.H. suffered any blood loss or internal injuries, there was no evidence to show that she received any medical attention other than one examination by Dr. Reed 17 hours after the incident, and in addition, M.H. was not taken

to the hospital immediately after the incident or ever hospitalized. We disagree with defendant's argument. When the victim was taken to the hospital and whether or not she suffered internal injuries or blood loss are not dispositive of whether she suffered severe bodily injury.

M.H. testified that when she was abducted by Laboy he pushed her into his car by her head, climbed over her putting his knee on her head, and closed the door. When she tried to lift her head, he hit her in the head five or six times with his handgun. Later, she struggled with the defendant and he slammed her head against the console between the car seats. When she screamed as they passed the police paddywagon, the defendant again slammed her head against the console and pressed the gun harder and harder against her head.

Dr. Diane Reed of Ravenswood Hospital examined the victim and observed swelling and tenderness on the top of her head and forehead, a large abrasion on her buttock and smaller ones on her right hip and left shoulder, as well as swelling and an abrasion on her right elbow.

The sentencing judge, who heard the testimony and observed the witnesses, stated, "There is no question in the Court's mind that your [defendant's] conduct certainly caused serious physical harm to this young lady [victim]." We agree with the trial court.

■ Laboy further argues that several of the trial court's comments preceding the imposition of the sentence disclosed that the trial court improperly considered factors inherent in the offense. Reading the trial court's comments in their entirety, it is clear that the trial court only considered proper factors in sentencing the defendant.

The defendant specifically points to the following comment by the trial court:

"[Y]ou banged her a few times with the gun across the head. You told her you were going to rape her. You were going to kill her if she saw your face. And when she saw your face, you said, now you have got it. Now you have got it. You're going to die. I have to kill you."

M.H. testified that when she was abducted by the defendant he told her not to look at his face. He also told her that if her boyfriend moved, he would kill her. Once in the car, the defendant hit her five or six times with a gun and told her if she moved "so much as a heartbeat" he would kill her. When M.H. was able to lift her head and observed the defendant's face, he said, "I told you not to look at me, now you have done it." The defendant became really angry, slammed her head down and accelerated around a corner. Shortly thereafter, M.H. jumped from the moving car.

The defendant is correct; the trial court's statement does not mirror the testimony presented at trial. However, taking the statement in context, the trial judge was merely giving a synopsis of the testimony prior to imposing the sentence. Any error the trial judge made in stating that the defendant threatened to kill M.H. after she saw his face rather than before is harmless.

■ The defendant further argues that the aforestated comment indicates that the trial court improperly relied on defendant's threat to use the weapon as a factor in aggravation. Again, we find that the trial court was giving a brief synopsis of the crime when that statement was made. Further, we do not feel that the trial court used the threat as a factor in aggravation.

In *People v. Barney* (1982), 111 Ill. App. 3d 669, 679, 444 N.E.2d 518, 525, this court stated as follows:

"[T]he imposition of a sentence of any length within the range provided for the class of the crime of which defendant was convicted is a decision committed by the statute to the discretion of the sentencing court. The statute imposes no requirement that the minimum sentence be imposed in the absence of aggravating factors."

When considering factors in aggravation and mitigation, the trial court specifically found that the defendant inflicted serious bodily harm upon the victim, as well as noting the defendant's prior convictions. The trial court also specifically stated that society needed protection from the defendant. Although the defendant received the maximum possible sentence for the offense, we do not believe the record indicates that any impermissible factors contributed to the sentencing decision. A reviewing court is not a sentencing court, and it should not substitute its judgment for that of the trial court merely because it would have balanced the factors differently. (*People v. Cox* (1980), 82 Ill. 2d 268, 280, 412 N.E.2d 541.) We find that the trial court did not abuse its discretion in sentencing the defendant.

Accordingly, for all the reasons set forth above, we reverse and remand the matter to the trial court for an evidentiary hearing on the issue of perjury. If the trial court finds that perjury was committed, the defendant is entitled to a new trial. However, if the trial court does not find the use of perjured testimony, defendant's convictions and sentences should be affirmed.

Reversed and remanded with directions.

LORENZ and GORDON, JJ., concur.