**Ronald SCAFIDE, Petitioner,**

v.

**Thomas P. ROTH, Respondent.**

**No. 98 C 1333.**

United States District Court,
N.D. Illinois,
Eastern Division.

Nov. 17, 1999.

See also 1998 WL 801802.

Ronald Scafide, Dixon, IL, pro se.

Courtney D. Carter, Assistant Attorney General, Chicago, IL, for Respondent.

### MEMORANDUM OPINION AND ORDER

BUCKLO, District Judge.

In 1990, Mr. Scafide was convicted of intentional murder and felony murder after a bench trial in Illinois state court and sentenced to thirty years in prison. Mr. Scafide exhausted his state court remedies

and, in February 1998, filed this petition for federal habeas relief for state prisoners under 28 U.S.C. § 2254 as amended by the Antiterrorism and Effective Death Penalty Act ("AEDPA") of 1996. I deny his claim for habeas relief.

The crime involved beating in the victim's head with a baseball bat in an apartment on West Diversey Street in Chicago, Illinois, on August 25, 1989. Ms. Helen Czerkawski met there with her former boyfriend Andy Rogala and three male acquaintances of his, including Mr. Scafide. These acquaintances had lured her and Mr. Rogala to the apartment on the pretext that she was to help Mr. Rogala rent the apartment with them. Instead, one of the men produced some knives and ripped off her clothes, stripping her naked. Another stood over Mr. Rogala with a baseball bat. Mr. Scafide and an accomplice dragged Mr. Rogala into a bathroom, where she heard crying, screaming, and moaning. They dragged him out, beaten to a bloody pulp, and dropped him in front of her. Mr. Rogala told her (speaking in Polish) that "the man with curly dark hair" had beaten him with a baseball bat. She testified that of the men present, only Mr. Scafide had curly dark hair. Mr. Scafide, still holding the bat, then stood watch over her in a bedroom where she had been taken with the threat that another of the men would rape her. She testified that, afraid for her life, she jumped out of the bottom of the bedroom window and fled.

■ Under AEDPA, habeas relief shall not be granted in a claim adjudicated on the merits unless the state court decision was contrary to, or involved an unreasonable application of clearly established federal law as determined by the United States Supreme Court, 28 U.S.C. § 2254(d)(1), or based on an unreasonable determination of the facts in light of the evidence presented. *Id.* § 2254(d)(2). Mr.

Scafide argues, first, that he was convicted on the basis of perjured testimony. To obtain relief under this theory, he must show that the government knowingly used perjured testimony which could have with any reasonable likelihood affected the verdict. *United States v. Agurs*, 427 U.S. 97, 103, 96 S.Ct. 2392, 49 L.Ed.2d 342 (1976).[1] The allegedly perjured testimony was offered by (1) Ms. Czerkawski, who said she jumped out of a first floor window in fear of her life, and (2) Detective O'Shea, an investigating officer, who testified that there were no bars on the bedroom window. Mr. Scafide claims this testimony was known to be perjurious because, he says, there were permanent bars affixed to the window, so Ms. Czerkawski could not have jumped out. Mr. Scafide offers photocopies of pictures (State's Exhibits Nos. 2 and 3) which he claims shows the window Ms. Czerkawski described, taken on August 25, 1989, without any bars. The government says that bars cannot be discerned in Mr. Scafide's photocopies, but the record seems not to include either the photocopies or the originals.

■ The missing photographs are not important, however. Detective O'Shea, however, testified that Exhibit No. 2, the exterior shot, did not depict the window in question, although Ms. Czerkawski testified that it did. The trial court believed him rather than her and could rationally have done so. She was understandably distracted when she saw the building on the day of the crime. Ms. Czerkawski testified that she did not recall whether there were any bars but that she was able to escape through the bottom of the window. Moreover, Mr. Scafide offers no reason to think that Ms. Czerkawski could not have escaped through the window even if had been barred. He and his acquaintances had certainly given her enough in-

---

1. Mr. Scafide cites some Illinois state cases which he believes give him a right to an evidentiary hearing into the alleged perjury. Apart from the fact that he misreads these cases, because a petitioner cannot have an automatic evidentiary hearing merely by alleging perjury, the state cases are irrelevant here. Under the federal habeas statute, Mr. Scafide must show a violation of federal law, not state law. *See* 28 U.S.C. § 2254(a).

centive to wriggle under or through even a barred window.

It is unclear, finally, why the testimony about the window, even if incorrect, was perjurious. Perjury in Illinois means materially false testimony made when known to be untrue. 10 ILCS 5/29–10; *People v. Laboy*, 227 Ill.App.3d 654, 169 Ill.Dec. 692, 592 N.E.2d 179, 185 (1992). A reasonable trier of fact might have concluded that the issues of the bars and Ms. Czerkawski's escape route were immaterial. While the court might have decided that any incorrect statement with regard to these issues impeached the testimony of Ms. Czerkawski or Detective O'Shea, it also might have decided that it did not, since neither is an element of the crime nor bears directly upon whether Mr. Scafide did it.

Mr. Scafide also claims (3) that Ms. Czerkawski lied on the stand when she testified that a victim was dragged to and from the bedroom bleeding profusely because, he says, there was no report by investigating officers of a "trial of blood saturating the carpet." However, detectives reported bloody splatters on the wall and chair next to the body where it was found and in its original position, as well as bloody towels in the bathroom where Mr. Rogala was beaten and blood soaking his shirt. Thus Mr. Scafide fails to show that the government used perjured testimony at all, knowingly or otherwise.

■ Second, Mr. Scafide argues that the evidence was constitutionally insufficient to convict him beyond a reasonable doubt. A sufficiency of the evidence claim is assessed taking the evidence in the light most favorable to the prosecution. *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979). Under 28 U.S.C. 2254(d)(2), moreover, I must defer to state court factual determinations. Mr. Scafide contends that the testimony of Ms. Czerkawski and Detective O'Shea was incredible. The trial court specifically found, however, that Ms. Czerkawski's testimony was "clear and credible" and corroborated by other evidence. The court also stated that it had taken into account the factors bearing on the credibility of other witnesses. I cannot conclude that its factual determination was unreasonable in light of the evidence presented. A rational trier of fact could have convicted him on its basis.

Third, Mr. Scafide argues that he was not tried before an impartial judge. He claims that he was assigned to Judge Hourihane " 'to obtain a specific outcome' of ensuring conviction." He offers in support of this claim an article from *Chicago Lawyer*, March 1987, which states that criminal cases in Cook County, Illinois, are assigned randomly by computer, except for "heater cases" which because of complexity or media attention are assigned in a separate category of ten judges, including Judge Hourihane. This does not show, however, that Mr. Scafide's own case was so assigned or that, if it was, it was assigned for the purpose of ensuring his conviction. Mr. Scafide offers no reason whatsoever to think that the judge actually evinced any bias or prejudice against him in his rulings.

■ Mr. Scafide argues, finally, that he received ineffective assistance of counsel both at trial and on appeal. A successful ineffective assistance of counsel argument requires a showing that the defendant's counsel's performance fell below "an objective standard of reasonableness" based upon "prevailing professional norms." *Strickland v. Washington*, 466 U.S. 668, 687–91, 104 S.Ct. 2052, 80 L.Ed.2d 674 (1984). Counsel's performance is presumed to fall within the wide range of reasonable professional judgment. *Id.* at 689, 104 S.Ct. 2052. To overcome this presumption, Mr. Scafide must demonstrate that his trial counsel's performance was deficient and that his counsel's deficiencies prejudiced his defense. *Id.* at 701, 104 S.Ct. 2052.

■ Mr. Scafide argues that his representation was constitutionally defective because his trial lawyers did not challenge the allegedly perjured testimony of Ms.

Czerkawski and Detective O'Shea, and because his appellate counsel did not raise the issue on appeal. But Mr. Scafide has not shown there was any perjury to object to. Moreover, his trial counsel attempted to impeach Ms. Czerkawski's testimony by showing her a photo, purportedly of the building in question, and eliciting from her the statement that the windows in the photo were barred. Finally, Mr. Scafide does not explain why it would have led to a different outcome had the judge believed his story about the barred windows. As noted, the judge might rationally have decided that even if true, it was immaterial.

Mr. Scafide argues as well that his trial counsel was ineffective in failing to ask for a new trial based in insufficiency of the evidence. But his lawyer did so move on those grounds, and the motion was denied.

Mr. Scafide asserts finally that he received ineffective assistance of trial counsel because the judge was biased and his lawyer failed to move for a substitution of judges. However, as explained, he offers no evidence that the judge was in fact biased and it is not ineffective assistance not to move for substitution of judges when there is no basis for such a motion. *See United States v. Neeley,* 189 F.3d 670, 683 (7th Cir.1999) (Counsel cannot be considered ineffective for "failing to [object] to the introduction of evidence that was properly admitted.") (*citing United States v. Draves,* 103 F.3d 1328, 1335–36 (7th Cir. 1997)).

Accordingly Mr. Scafide's petition for habeas corpus under 28 U.S.C. § 2254 is DENIED.