THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, v. DAVID A. SMITH, Defendant-Appellant.

First District (6th Division)   No. 1—03—1143

Opinion filed September 24, 2004.

Winston & Strawn, L.L.P., of Chicago (Steven F. Molo, Dane A. Drobny, Scott P. Glauberman, Amy L. Flaherty, and Theodore Z. Polley III, of counsel), and Steven E. Eberhardt, of Crestwood, for appellant.

Richard A. Devine, State's Attorney, of Chicago (Renee Goldfarb, William D. Carroll, and Barbara L. Jones, Assistant State's Attorneys, of counsel), for the People.

JUSTICE O'MARA FROSSARD delivered the opinion of the court: The issue on appeal involves defendant's allegation of forensic fraud by serological expert Pamela Fish. Defendant's successful post-conviction petition alleged: "Petitioner was denied his right to due process of law under the 14th amendment to the United States Constitution and section I, article 2 of the Constitution of the State of Illinois where the State presented the perjured testimony of criminal-ist Pamela Fish to secure the conviction of the petitioner." U.S. Const. amend. XIV; Ill. Const. 1970, art. I, § 2. Defendant, in his petition, does not raise a claim of actual innocence; rather, he alleges Fish's perjured testimony violated due process and denied him a fair trial. We find the circuit court erred in dismissing defendant's postconviction petition. We reverse and remand for an evidentiary hearing.

In January 1989, a jury found defendant, David Smith, guilty of murder, aggravated criminal sexual assault, and home invasion and sentenced him to death. The Illinois Supreme Court affirmed his conviction, but vacated the death sentence and remanded for a new sentencing hearing because the trial court failed to life-qualify the jury. *People v. Smith*, 152 Ill. 2d 229, 274 (1992). In March 1994, defendant was sentenced to death a second time. He appealed to the Illinois Supreme Court and his second capital sentence was affirmed. *People v. Smith*, 176 Ill. 2d 217, 261 (1997). The United States Supreme Court denied defendant's petition for a writ of *certiorari* on October 14, 1997. *Smith v. Illinois*, 522 U.S. 920, 139 L. Ed. 2d 241, 118 S. Ct. 311 (1997). While his second appeal to the Illinois Supreme Court was pending, he filed a *pro se* petition for postconviction relief in December 1995. The State filed a motion to dismiss, and in

December 1997, defendant's court-appointed counsel filed an amended petition that was dismissed by the circuit court on November 6, 1998. The Illinois Supreme Court affirmed. *People v. Smith*, 195 Ill. 2d 179, 207-08 (2000). The United States Supreme Court denied defendant's petition for writ of *certiorari*. *Smith v. Illinois*, 534 U.S. 886, 151 L. Ed. 2d 139, 122 S. Ct. 196 (2001).

Defendant filed his successive petition for postconviction relief on March 21, 2002, alleging that Pamela Fish, the State's serological expert, presented perjured testimony. The circuit court dismissed the petition. Defendant appealed the dismissal of his successive petition to the Illinois Supreme Court. Before the State's response was filed, former Governor George Ryan on January 11, 2003, granted defendant's clemency petition and commuted his sentence of death to a sentence of life in prison without the possibility of parole. Regarding defendant's appeal of the dismissal of his successive petition, the Illinois Supreme Court concluded that it did not have jurisdiction because the defendant was no longer sentenced to death. Accordingly, the Illinois Supreme Court ordered that defendant's appeal of the dismissal of his petition be reviewed by the Appellate Court. The facts of the case may be found in the previous published opinions and will only be repeated as needed to resolve the issue presented in the instant appeal. See *People v. Smith*, 152 Ill. 2d 229 (1992); *People v. Smith*, 176 Ill. 2d 217 (1997).

## I. POST-CONVICTION HEARING ACT

The Post-Conviction Hearing Act (Act) (725 ILCS 5/122—1 *et seq.* (West 1998)) provides that a defendant may challenge his conviction by alleging "that in the proceedings which resulted in his or her conviction there was a substantial denial of his or her rights under the Constitution of the United States or of the State of Illinois or both." 725 ILCS 5/122—1(a) (West 1998); *People v. Tenner*, 175 Ill. 2d 372, 377 (1997). A petition filed under the Act must "clearly set forth the respects in which petitioner's constitutional rights were violated." 725 ILCS 5/122—2 (West 1998). The petition shall have attached "affidavits, records, or other evidence" as required by section 122—2 of the Act, "supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122—2 (West 1998); *People v. Collins*, 202 Ill. 2d 59, 66 (2002). The Act's different procedures for prisoners under sentence of death as opposed to those sentenced to imprisonment are discussed in *People v. Brisbon*, 164 Ill. 2d 236, 242-43 (1995).

Proceedings under the Act are commenced by the filing of a petition in the circuit court in which the original proceeding took place, clearly alleging the way in which the petitioner's rights were violated.

725 ILCS 5/122—2 (West 1998). The defendant was under sentence of death when the circuit court considered and dismissed his postconviction petition. In the case of a petitioner under sentence of death, section 122—5 directs that the State shall either answer or move to dismiss the petition. 725 ILCS 5/122—5 (West 1998). A motion to dismiss raises solely the question of sufficiency of the pleadings, as a matter of law, and admits the pleadings solely for purposes of deciding the legal question. *People v. Coleman*, 183 Ill. 2d 366, 390 (1988).

## II. PROCEDURAL BACKGROUND

Based on the procedural posture of this case, the relevant question is whether the allegations of the petition, supported by the record and accompanying documents, demonstrate a substantial showing of a constitutional violation warranting an evidentiary hearing. *People v. Edwards*, 197 Ill. 2d 239, 245-46 (2001). If a substantial showing of a constitutional violation is established, the petition is to be given an evidentiary hearing in accordance with section 122—6 of the Act. 725 ILCS 5/122—6 (West 1998); *People v. Gaultney*, 174 Ill. 2d 410, 418 (1996). Unless positively rebutted by the record, factual disputes raised by the pleadings cannot be resolved without an evidentiary hearing. *Coleman*, 183 Ill. 2d at 381.

We review the dismissal of the petition without an evidentiary hearing in the instant case mindful of the following caveat provided by the Illinois Supreme Court in *Coleman*:

"Thus, at the dismissal stage of a postconviction proceeding, whether under section 122—2.1 or under section 122—5, the circuit court is concerned merely with determining whether the petition's allegations sufficiently demonstrate a constitutional infirmity which would necessitate relief under the Act. Moreover, our past holdings have foreclosed the circuit court from engaging in any fact-finding at a dismissal hearing because all well-pleaded facts are to be taken as true at this point in the proceeding. [Citations.]" *Coleman*, 183 Ill. 2d at 380-81.

The Illinois Supreme Court in *Coleman* recognized that factual disputes raised by the pleadings require determination of the truth or falsity of the supporting documents, including affidavits and exhibits, and such determination cannot be made at a hearing on a motion to dismiss but, rather, can only be resolved by an evidentiary hearing. *Coleman*, 183 Ill. 2d at 381, citing *People v. Caballero*, 126 Ill. 2d 248, 259 (1989), and *People v. Wegner*, 40 Ill. 2d 28, 31-32 (1968). *Coleman*, similar to the instant case, addressed postconviction allegations that perjured testimony was used to obtain a criminal conviction. *Coleman*, 183 Ill. 2d at 389.

The State, in its written motion to dismiss and during the hearing

on the motion, argued that the successive petition was procedurally barred because defendant failed to demonstrate cause and prejudice as required by *People v. Pitsonbarger*, 205 Ill. 2d 444 (2002). However, the State on appeal does not argue that the successive petition was procedurally barred. In fact the State's brief does not mention *Pitsonbarger* or reference the cause and prejudice test applied by the Illinois Supreme Court in that case. See *Pitsonbarger*, 205 Ill. 2d 444. Arguments not raised in the appellant's opening brief are waived. 177 Ill. 2d R. 341(e)7; *People v. Batrez*, 334 Ill. App. 3d 772, 778 (2002). The Illinois Supreme Court has recognized that a "dutiful" prosecutor may choose to waive procedural default at the second stage of the postconviction proceeding. *People v. Boclair*, 202 Ill. 2d 89, 101-02 (2002).

■ In the context of a successive postconviction petition, the procedural bar of waiver is an express requirement of the statute and, therefore, cannot be relaxed unless fundamental fairness so requires. 725 ILCS 5/122—3 (West 2002). Where the death penalty or a claim of actual innocence is involved a successive postconviction petition may be reviewed to prevent a fundamental miscarriage of justice. *Pitsonbarger*, 205 Ill. 2d at 459. Neither the death penalty nor a claim of actual innocence is involved in the successive postconviction petition filed in the instant case.

■ When a defendant, in a successive petition, does not raise an "actual innocence" claim, the court in *Pitsonbarger* held that "the cause-and-prejudice test is the analytical tool that is to be used to determine whether fundamental fairness requires that an exception be made to section 122—3 so that a claim raised in a successive petition may be considered on its merits." *Pitsonbarger*, 205 Ill. 2d at 459. Under this test, a defendant must show good cause for failing to raise the claimed error in a prior proceeding and that actual prejudice resulted from the error. The court in *Pitsonbarger* defined cause to be "any objective factor, external to the defense, which impeded the petitioner's ability to raise a specific claim at the initial post-conviction proceeding." *Pitsonbarger*, 205 Ill. 2d at 462. Where a claimed error could not have been presented in an earlier proceeding, there is a potential that a second or subsequent postconviction petition may properly be filed. *People v. Jones*, 191 Ill. 2d 194 (2000).

The record reflects the allegation regarding Fish's testimony was based on newly discovered information which was unknown until April 1998, after defendant filed his first petition. Thus, the cause component of the *Pitsonbarger* test is satisfied. The State, on appeal, does not contest that the problems with Fish's testimony in several other criminal cases were unknown until after defendant filed his first postconviction petition and, therefore, could not have been presented in defendant's first petition.

Regarding the prejudice component, the procedural bar of waiver in the context of a successive postconviction petition is an express requirement of the statute; however, it can be relaxed if fundamental fairness so requires. 725 ILCS 5/122—3 (West 2002); *Pitsonbarger*, 205 Ill. 2d at 458. The court in *Pitsonbarger* indicated that prejudice "would occur if the petitioner were denied consideration of an error that so infected the entire trial that the resulting conviction or sentence violates due process." *Pitsonbarger*, 205 Ill. 2d at 464, citing *People v. Flores*, 153 Ill. 2d 264, 279 (1992). The State's knowing use of perjured testimony to obtain a criminal conviction constitutes a violation of due process. *People v. Jimerson*, 166 Ill. 2d 211, 223 (1995). A conviction obtained by the knowing use of perjured testimony violates due process and must be set aside if there is "any reasonable likelihood that the false testimony could have affected the jury's verdict." *People v. Olinger*, 176 Ill. 2d 326, 345 (1997); *United States v. Bagley*, 473 U.S. 667, 678, 87 L. Ed. 2d 481, 492, 105 S. Ct. 3375, 3381-82 (1985).

In the instant case, the petition does not allege that the prosecution knew the testimony provided by Fish was false. "In order to establish a violation of due process, the prosecutor actually trying the case need not have known that the testimony was false; rather, knowledge on the part of any representative or agent of the prosecution is enough." *Olinger*, 176 Ill. 2d at 348, citing *People v. Brown*, 169 Ill. 2d 94, 103 (1995) (and cases cited therein); accord *Giglio v. United States*, 405 U.S. 150, 31 L. Ed. 2d 104, 92 S. Ct. 763 (1972). The petition alleges that the "State presented the perjured testimony of criminalist Pamela Fish to secure the conviction of petitioner." The record reflects no knowledge of the alleged perjury by the trial prosecutors. The record reflects no impropriety by the trial prosecutors. However, if in fact the allegation of perjured testimony affecting the jury's verdict is proven by defendant, whether known or unknown to the prosecution, a due process violation occurred since the prosecution is charged with knowledge of its agents, including the police. *Olinger*, 176 Ill. 2d at 348; *People v. Ellis*, 315 Ill. App. 3d 1108, 1113 (2000) (and cases cited therein); *People v. Torres*, 305 Ill. App. 3d 679, 685 (1999) (prosecutor need not have known that the testimony was false; it is enough if there was knowledge by representatives or agents of the prosecution).

As recognized by the Illinois Supreme Court in *Flores*, a successive postconviction petition brings into play two competing interests: the State's interest in providing a mechanism for protecting the petitioner's constitutional rights and the State's interest in the finality of criminal litigation. *Flores*, 153 Ill. 2d at 274. When a defendant such

as Smith could not have raised a claim in a first postconviction petition, "procedural bars may be ineffectual in bringing about that finality which ordinarily follows direct appeal and the first post-conviction proceeding." *Flores*, 153 Ill. 2d at 275.

## III. ANALYSIS

As previously noted on appeal, the State did not argue the successive petition was procedurally barred, but argued the petition was properly dismissed without a hearing. The defendant argues he was denied a fair trial and his due process rights were violated by the alleged perjured testimony of serologist Pamela Fish. Defendant is seeking discovery and an evidentiary hearing on that allegation. Under section 122—5 of the Act, the State had the choice of either answering the petition or moving to dismiss the petition. 725 ILCS 5/122—5 (West 1998). By seeking to dismiss the postconviction petition, the State assumed the truth of factually supported allegations contained in defendant's petition, at least for purposes of the motion to dismiss. *Coleman*, 183 Ill. 2d at 390. Had the State wished to demonstrate Fish's credibility, the State could have answered the petition, rather than move to dismiss it, because a motion to dismiss raises solely the question of the sufficiency of the pleadings, as a matter of law, and admits the pleadings solely for purposes of deciding the legal question. See *Coleman*, 183 Ill. 2d at 390. We review *de novo* the dismissal of the petition. *Coleman*, 183 Ill. 2d at 388-89.

The State, on appeal, argues that the petition was properly dismissed for two reasons: (1) the defendant failed to show any constitutional violation because the testimony provided by Fish was not material; and (2) the petition is legally insufficient because defendant failed to provide documentation as required by section 122—2 of the Act supporting his allegation of "false or perjured testimony." We take each argument in turn.

## A. MATERIALITY

■ Materiality is demonstrated "by showing that the favorable evidence could reasonably be taken to put the whole case in such a different light as to undermine confidence in the verdict." *Kyles v. Whitley*, 514 U.S. 419, 435, 131 L. Ed. 2d 490, 506, 115 S. Ct. 1555, 1566 (1995). Materiality "is not a sufficiency of evidence test." *Kyles*, 514 U.S. at 434, 131 L. Ed. 2d at 506, 115 S. Ct. at 1566. A circuit court's decision to dismiss a postconviction claim alleging a conviction obtained through the use of perjury can be affirmed if it can be found that the alleged false testimony, which must be assumed as true for purposes of the second-stage motion to dismiss, is not material. *Coleman*, 183 Ill. 2d at 394.

Defendant argues Fish's testimony was material because it provided the only physical link between the crime and defendant. The State, in its written motion to dismiss, during the hearing to dismiss the petition, and on appeal, contended the serology evidence and testimony by Fish is not material because both the victim and defendant had the same blood type. Regarding trial testimony provided by Fish, the State orally argued during the motion to dismiss that "even if you get beyond the speculative and conclusory nature of the *Brady* allegation here, there is no way it would be material." That argument was quoted by the State on appeal. In its written motion to dismiss, the State further argued the following as to materiality: "Both petitioner and the victim had the same type blood and stains could not be distinguished as coming from either individual[ ]. Therefore, the serology evidence was not materially relevant as the blood found on petitioner and his clothing could have been his own blood."

The argument that the serology evidence is not materially relevant because the blood found on defendant could have been his own blood is in direct opposition to the argument made by the State at defendant's trial. The State during trial relied on the blood found on defendant to connect defendant to the crime. The State's argument during the postconviction proceeding contradicts the use of the serology evidence by the State at trial. While the State attempts to brush aside the importance of Fish's testimony, we note that the State decided to provide what it now characterizes as immaterial testimony and evidence when it called Fish as an expert witness, presented her testimony on direct and redirect, and relied on her testimony in opening statement and closing argument. Essentially, the State relied on Fish's testimony to prove that the blood on defendant, his clothing, and his shoes was consistent with the victim's blood thereby connecting defendant to the crime.

In opening statement, the State referred to blood recovered at the crime scene and on the clothes found with defendant that were processed by the crime lab. The State also told the jury that blood was recovered from Smith's underwear and that "you will see that as part of the evidence." During direct examination, Fish testified that both defendant and the victim had the same blood type. During redirect examination by the State, Fish testified that the blood on defendant's underwear and on his shoes was consistent with the blood of Lisa Ferguson as follows:

"[THE STATE]: Miss Fish, out of the ten possible variations of the enzymes that you tested for on the, from the blood, from David Smith's underwear, the enzymes that you did recover were consistent with those enzymes from Lisa Ferguson's blood, correct?

FISH: That's correct.

[THE STATE]: And out of those ten possible variations in enzymes, be the enzymes that you did, were you able to recover enzymes from the blood samples from the defendant's shoes?

FISH: Yes, I was.

[THE STATE]: And out of those that you were able to recover from the defendant's shoes, the ones that were recovered were all consistent with the blood of Lisa Ferguson, is that correct?

FISH: That's correct."

While there was no dispute that both defendant and victim had the same blood type, the redirect of Fish by the prosecution demonstrated that the blood found on defendant's underwear and shoes was consistent with the victim's blood. On recross-examination by defense counsel, Fish admitted the stains on the underwear and shoes could have come from Lisa Ferguson or defendant.

In closing, the State argued the following:

"[THE STATE]: The evidence against David Smith concerning the blood, though I believe counsel would want you to believe that it's just a coincidence that within two hours of Lisa Ferguson being killed, within two to three blocks of where she was killed, David Smith has blood on his shirt, on his underwear, on his shoes, that matches Lisa Ferguson's blood.

Now, he's got a cut on his finger, so it could be his blood also, but, ask yourself about these coincidences and the timing and the placement of all of this blood, and you look at the scene and see the blood on the scene and the blood all over Lisa, and then the blood where it was found on him and you ask, was it a coincidence?

If you try to give an explanation or try to understand about this blood and the washing off, please, also, remember that the time these clothes were washed, that he was wearing them earlier that evening at Bucko's and they are recovered now at about ten o'clock at night having been soaking wet, washed, how many people, just for the sake of it, wash their clothes on St. Patrick's Day at ten o'clock at night?

[DEFENSE COUNSEL]: Objection, Judge, speculation, no evidence.

THE COURT: Proceed, the jury has heard the evidence.

[THE STATE]: And that is mere coincidence that this defendant should have type A blood on his knee within two hours of Lisa Ferguson shedding all of her blood on that floor ***[?]"

■ The State argues that defendant's petition failed to show any constitutional violation because Fish's testimony was not material. In support of that argument, the State relies on the conclusion reached by the Illinois Supreme Court that the evidence of defendant's guilt

was strong. *Smith*, 152 Ill. 2d at 259. We are mindful that the Illinois Supreme Court affirmed defendant's convictions, holding that (1) defendant was properly arrested (*Smith*, 152 Ill. 2d at 250); (2) defendant's statements " 'I saw somebody get killed tonight,' " and " 'I did it' " were properly admitted (*Smith*, 152 Ill. 2d at 240); (3) defendant's bloody clothes worn earlier in the evening and found in his washtub were seized based on a valid search (*Smith*, 152 Ill. 2d at 251); (4) defendant's written statement in which he admitted killing the victim was properly in evidence (*Smith*, 152 Ill. 2d at 255-57); and (5) the statement of the four-year-old witness that "David" was in the home was properly in evidence (*Smith*, 152 Ill. 2d at 259). However, materiality is not a "sufficiency of evidence test." *Kyles*, 514 U.S. at 434, 131 L. Ed. 2d at 506, 115 S. Ct. at 1566. It is unrebutted that Fish's trial testimony, as relied upon by the State, connected defendant to the crime. For the reasons previously discussed, at this pleading stage of the postconviction process, we reject the State's argument that testimony provided by Fish was not material. We emphasize this finding is limited to the pleading stage of the postconviction process.

## B. SUFFICIENCY OF PETITION

■ The State, in support of its motion to dismiss and on appeal, contends that the petition is legally insufficient. The State, in its brief on appeal, argued: "Petitioner fails to support this claim with any affidavits. Instead he attached to his petition a petition from another defendant in another unrelated case and articles from the Chicago Tribune. Importantly, no actual proof of any wrongdoing on the part of Ms. Fish has been attached to petitioner's petition. No affidavits are attached. As argued at the hearing the other cases relied upon by petitioner involve different facts and are collateral."

Section 122—2 of the Act requires the petition shall have attached "affidavits, records, or other evidence supporting its allegations or shall state why the same are not attached." 725 ILCS 5/122—2 (West 1998); *Collins*, 202 Ill. 2d at 67. In the instant case, the defendant attached several Chicago Tribune articles to his petition and a "Petition to Vacate Judgment" from the case of People v. Willis, No. 90 CR 23912.

In addressing the State's contention that the petition was not properly supported by affidavits or other evidence, we are mindful that a petition that is not supported by affidavits, records, or other evidence is properly dismissed without an evidentiary hearing unless the defendant's allegation is uncontradicted and supported by the record. *People v. Johnson*, 183 Ill. 2d 176, 191 (1998). However, when a petitioner's claims are based upon matters outside the record, the

Act does not intend that such claims be adjudicated on the pleadings. *Coleman*, 183 Ill. 2d at 382. We are also mindful that unless positively rebutted by the record, factual disputes raised by the pleadings cannot be resolved without an evidentiary hearing. *Coleman*, 183 Ill. 2d at 381. In the instant case, the petition involves an allegation of false testimony based upon matters outside the record. Defendant attempted to obtain information regarding those matters with document subpoenas and the deposition subpoena of Fish but was prevented by the State from doing so with the State's successful motion to quash.

Before the hearing on the State's motion to dismiss the petition, defendant subpoenaed three sets of documents from the State's Attorney's office, including the entire file on David Smith, information regarding the Promise system, and information regarding Pamela Fish. The defendant also subpoenaed Fish for deposition. Pamela Fish, under subpoena, agreed to give her deposition. The State, however, objected to the document subpoenas and to the deposition subpoena in a motion to quash, indicating: "I'm asking that the subpoenas be quashed and the deposition also be quashed." That motion was filed by the State and ruled upon by the court before the State filed its motion to dismiss the petition. We note that the Act neither authorizes nor prohibits the taking of depositions; rather, "it is a matter within the trial judge's inherent authority." *People v. Hall*, 157 Ill. 2d 324, 340 (1993). In the instant case, the judge sustained the State's motion to quash without prejudice and quashed all subpoenas.

The defendant relies on *Coleman*, where the Illinois Supreme Court remanded for evidentiary hearing a postconviction petition alleging the conviction was the result of perjured testimony. *Coleman*, 183 Ill. 2d at 389. The State, in its brief, argues *Coleman* is factually inapplicable because in *Coleman* "the petitioner attached a detailed affidavit from a witness who claimed her testimony was false." See *Coleman*, 183 Ill. 2d at 389. Attempting to distinguish *Coleman* from the instant case, the State argues in its brief that, "In contrast [to *Coleman*], in the instant case, petitioner fails to attach any affidavits or any supporting documents suggesting a constitutional violation."

However, it was the successful objection by the State to Fish's subpoenaed deposition, which she was willing to give, that prevented defendant from attaching to his petition sworn deposition testimony from the very witness at the center of the perjury allegation who defendant alleged provided false testimony. The State's successful motion to quash the document subpoenas and the deposition subpoena precluded the defense from further developing a record, thereby limiting the nature and extent of the documentation produced and attached to the petition. The record reflects the subpoenaed deposition

of Fish was not attached to the petition because the State's motion to quash the subpoenaed deposition was granted by the circuit court as follows: "I'm not going to force any subpoenas ordering her to do this unless and until the issues are resolved on a motion to dismiss." Accordingly, regarding the deposition of Fish the record reflects why the deposition is not attached to the petition and thereby complies with section 122—2 of the Act, which requires the records be attached to a petition or an explanation "why the same are not attached." 725 ILCS 5/122—2 (West 1998).

The record reflects additional compliance with section 122—2 of the Act. We note that at various points throughout Fish's trial testimony, she indicated that due to insufficient sample size she was unable to type blood samples from blood found on Smith's leg and on various articles of Smith's clothing, including a long underwear shirt and long underwear pants. Fish also indicated that some of the tests she performed were inconclusive as demonstrated by the following testimony by Fish on cross-examination:

"[DEFENSE COUNSEL]: The underpants, which counsel have shown you, you labeled those Q-3, is that correct?

FISH: That's correct, yes.

[DEFENSE COUNSEL]: And, again, with that, you tested for the presence of blood and for human blood, is that correct?

FISH: That's correct.

[DEFENSE COUNSEL]: And those tests proved positive?

FISH: That's correct.

[DEFENSE COUNSEL]: And you then tested under the A B O system to determine the type, is that correct?

FISH: Yes, sir.

[DEFENSE COUNSEL]: Did you have a sufficient sample to make that A B O determination or conduct the tests?

FISH: Yes, I did.

[DEFENSE COUNSEL]: And in fact, those tests under the A B O system proved inconclusive, is that correct?

FISH: That's correct.

[DEFENSE COUNSEL]: In other words you could not determine through an even reasonable degree of scientific certainty, the blood type of the stains on those underpants?

FISH: That's correct."

Attached to defendant's petition was the "Petition to Vacate Judgment" from People v. Willis, No. 90 CR 23912 (hereinafter *Willis*), which demonstrated that Fish similarly testified the results of her tests were inconclusive in the *Willis* case. It was not until April of 1998 that defense attorneys in the *Willis* case discovered, by reviewing Fish's notes of test results, that her testing did not produce inconclu-

sive results, but actually exonerated Willis. Willis was released from prison after serving 8 years of a 100-year sentence for rape. Although Willis had requested the forensic results before trial, he was not given the exculpatory results. Rather, Pamela Fish incorrectly reported the results as "inconclusive" and repeated this assertion at trial. The forensic results in fact excluded Willis, which defense counsel discovered after trial when given the opportunity to examine the notes of the test results. This information provided by the attached "Petition to Vacate Judgment" is unrebutted by the record.

Without a hearing it cannot be determined whether Fish's testimony in the instant case regarding inconclusive test results was factually accurate or factually false as it was found to be in the *Willis* case. Without a hearing, it cannot be determined whether Fish's testimony that she was unable to type some of the blood samples in the instant case due to insufficient size was factually accurate or factually false.

Fish also conducted an electrophoresis enzyme test on the blood found on Smith's underpants, and on cross-examination she testified that for 6 of the 10 subcategories of enzymes she tested for, she got no reaction. However, on redirect she claimed that the enzymes she did recover from defendant's underwear were consistent with the victim's blood. Fish's testimony that she got no reaction from the test is similar to her testimony in the *Willis* case where she reported her test results as inconclusive. As previously noted, the forensic results in fact were inaccurately reported by Fish as inconclusive and in fact excluded Willis. Without a hearing, it cannot be determined whether Fish's testimony in the instant case that she got no reaction was factually accurate or factually false.

In addition to the testimony regarding blood tests, Fish testified that she tested swabs from the oral, anal, and vaginal areas of the victim and that all tested negative for the presence of semen. Without a hearing, it cannot be determined whether Fish's testimony that the oral, anal, and vaginal swabs were negative for semen was in fact accurate or false.

Fish further testified she did not conduct DNA testing of any of the blood samples because the blood sample was "degraded." Without a hearing, it cannot be determined whether Fish's inability to conduct DNA testing for the reason provided at trial was in fact accurate or, as alleged by defendant, factually false, as similar testimony was found to be in the *Willis* case. See *People v. Dodds*, 344 Ill. App. 3d 513 (2003) (circuit court improperly failed to give evidentiary hearing on postconviction petition alleging new DNA evidence which demonstrated defendant was not physically connected to the crime, contrary to the

testimony provided by State's expert trial witness, serologist Pamela Fish); *People v. Mitts*, 327 Ill. App. 3d 1 (2001) (laboratory analyst Pamela Fish working with DNA samples allegedly asked State before trial to investigate whether victim had consensual sex before she was sexually assaulted; State's failure to investigate resulted in no testing of the second DNA found on victim with DNA sample from victim's boyfriend, denying defendant a fair trial).

At this stage of the proceeding, we find that the document filed in the *Willis* case, which is attached to the instant petition, supports the allegations in the petition in compliance with the attached record requirement of section 122—2 of the Act. 725 ILCS 5/122—2 (West 1998).

## C. PETITION ALLEGES FACTUAL DISPUTES UNREBUTTED BY RECORD

■ Defendant's petition alleged, "After a full review of the materials tendered to current counsel, counsel have no copies of Fish's lab reports or of her lab notes." Defendant's petition further alleged that "counsel must review the notes and reports to effectively represent the petitioner." Defendant argues that without Fish's lab reports and notes, neither trial counsel nor postconviction counsel could adequately test the factual accuracy of Fish's testimony.

Regarding the lab reports and lab notes, the State, in its written motion to dismiss, argued the following: "The transcript of the serologist's testimony makes it abundantly clear that not only did defense counsel have detailed reports concerning the testing, but counsel effectively cross-examined the serologist negating inculpatory interpretations of the results." However, the trial testimony of serologist Fish makes no specific reference to lab notes or lab reports. The record of Fish's trial testimony reflects that the word "reports" appears only twice. The word "reports" was used once by defense counsel during the cross-examination of Fish and repeated once by Fish in her answer as follows:

> "[DEFENSE COUNSEL]: And when you get a sample or a stain or whatever, you always give it a label so that you can refer to it in reports and such, is that correct?
>
> FISH: We give it an exhibit number in our reports, we give all suspect material coming from suspects Q numbers."

The State's argument that the transcript of Fish's trial testimony makes it "abundantly clear" that defense counsel had "detailed reports" is not supported by the trial record. The State, during the hearing on the motion to dismiss, argued that "the Defense attorney had the discovery materials on this and cross-examined Ms. Fish." The State characterized the cross-examination as thorough and

detailed. The State did not, however, specifically indicate that Fish's lab notes and lab reports were given to trial counsel and postconviction counsel but, rather, challenged the allegation regarding trial counsel by relying on Fish's trial testimony and arguing that the thorough and detailed cross-examination by defense counsel demonstrated defense counsel had the discovery materials. Other than the general reference to "reports" previously noted, defense counsel, during trial, made no reference to lab notes or lab reports in his cross-examination of Fish. During Fish's trial testimony, the word "reports" was mentioned in total only twice, as previously noted. This allegation raises a question of fact unanswered by the record.

Examination of the record is designed to assist in determining whether a petition states a constitutional deprivation substantively rebutted by the record rendering the petition without merit. 725 ILCS 5/122—2, 122—2.1(a)(2), (c) (West 1998). Our review of the record, including the trial testimony and the postconviction record, reflects that the record fails to demonstrate that trial counsel and postconviction counsel were given copies of Fish's lab reports or lab notes. As previously noted, the State's motion to quash defense document subpoenas was successful. The petition alleged a negative, that is, the absence of Fish's lab reports or lab notes, and neither the record nor the State rebutted that allegation. The State's argument regarding thorough cross-examination and "detailed reports" did not resolve the specific question of fact as to whether trial counsel and postconviction counsel were given Fish's lab reports and lab notes.

In dismissing the petition, the circuit court characterized Fish's role at trial as follows: "All she did was identify blood types, which I am told now that she did so accurately." That statement demonstrates a misunderstanding of the petition's allegations. The petition challenged the accuracy of Fish's testimony by alleging that Fish's testimony was perjured. The allegation of perjury raises the question of whether Fish's testimony regarding serological results, which in her opinion were inconclusive, and samples, which in her opinion were insufficient in size or too degraded to further test, was in fact accurate or truthful. The allegation of perjury, together with the allegation regarding Fish's lab reports and lab notes, raises the question of whether Fish provided testimony inconsistent with her lab notes and lab results as she did in the *Willis* case. There are questions of fact raised by the pleadings and unrebutted by the record. Unless positively rebutted by the record, factual disputes raised by the pleadings cannot be resolved without an evidentiary hearing. *Coleman*, 183 Ill. 2d at 381.

## D. LACK OF EXPERT REPORTS FAILS TO COMPLY WITH SECTION 122—2

■ The petition, quoting a Chicago Tribune article, alleges, based on a report released in January 2001 by forensic DNA expert Dr. Edward Blake and criminalist Alan Keel analyzing Fish's serological work in several criminal cases unrelated to the instant case, that "in many of these cases, Ms. Fish misrepresent[ed] the scientific significance of her findings either directly or by ommission. *** The nature of these errors is such that a reasonable investigator, attorney or fact finder would be misled ***. And, always she offered the opinion most damaging to the defendant." Maurice Possley, DNA Test Basis of Release Request, Chicago Tribune, October 9, 2002, at Metro 1. The petition also alleges that Dr. Blake in a report characterized Fish's trial testimony as "scientific fraud" in the Lori Roschetti case where, after DNA testing was ordered, all of the defendants were exonerated. Maurice Possley & Steve Mills, Chicago Tribune, November 14, 2001. Attached to the petition were the various Chicago Tribune articles quoting Blake and Keel; however, petitioner failed to attach the actual reports from Blake or Keel. The State, during the hearing on the motion to dismiss, stated that "what is in the newspaper articles is not accurate."

We need not address the accuracy of the newspaper articles. The record reflects no explanation by defendant as to why the actual reports by Blake and Keel are not attached to the petition. By not attaching Blake and Keel's reports or explaining their absence, defendant failed to comply with section 122—2 of the Act which requires either that such records be attached or an explanation provided as to why the records are not attached. 725 ILCS 122—2 (West 1998). Accordingly, the Act precludes us from relying on the information provided by Blake and Keel.

## E. ALLEGATIONS NOT RAISED IN PETITION CANNOT BE CONSIDERED ON APPEAL

■ Defendant, in his reply brief, relies on a case involving the conviction of Dana Holland. Defendant argues, "In yet another case, Dana Holland was sentenced to 90 years in prison for sexual assault after a sworn statement from Fish was read in court claiming that the sample of evidence in her possession was too small to reveal the DNA profile of the victim's attacker. Seven years later, a private DNA lab examined the same evidence, found a DNA profile, and determined that Holland could not have been the source of the DNA. The company obtained a result even though the test they used required two processes and the test Fish would have performed required only one.

Both Dr. Blake and Mary Gibbons, director of the Oakland Police Department crime lab, have stated that if there was enough evidence to perform these two tests, Fish should have been able to perform the test requiring just one." Defendant, in his reply brief, acknowledges that Fish's involvement in the Holland case did not come to light until an article was published in the Chicago Tribune in October 2002. Maurice Possley, DNA Test Basis of Release Request, Chicago Tribune, October 9, 2002, at Metro 1. The article was published after the successive petition was filed.

We are mindful that Supreme Court Rule 341, as well as case law, precludes us from considering this argument. 177 Ill. 2d R. 341(e)(7); *People v. Brown*, 169 Ill. 2d 94 108 (1995) (arguments raised for the first time in reply brief are considered waived). Moreover, allegations not raised in the postconviction petition cannot be considered on appeal. *People v. Jones*, 211 Ill. 2d 140 (2004); *People v. Griffin*, 321 Ill. App. 3d 425, 428 (2001) (the Act does not permit a defendant to raise an issue on appeal from the dismissal of a postconviction petition that he never raised in the petition). No reports or affidavits from Blake or Gibbons are provided as supplemental attachments to the petition. We note, parenthetically, that the explanation given by Fish in the *Holland* case for her failure to perform DNA testing, specifically, that the sample was too small, is not unlike Fish's explanation for the failure to perform DNA testing in the instant case, that the sample was too degraded. However, for the reasons previously discussed, we do not consider this argument, but limit our review to the allegations raised in the petition.

## IV. CONCLUSION

■ In the instant case, factual disputes regarding the alleged perjured testimony of Pamela Fish raised by the pleadings, and unrebutted by the record, require a determination of their truth or falsity which cannot be resolved at a hearing on a motion to dismiss but, rather, can only be resolved by an evidentiary hearing. *Coleman*, 183 Ill. 2d at 381 (and cases cited therein) (unless positively rebutted by the record, factual disputes raised by pleadings require determination of their truth or falsity and cannot be resolved at a hearing on a motion to dismiss). The petition in the instant case alleged perjured testimony based upon matters outside the record, including, but not limited to, the lab notes and lab reports, and raises factual questions unrebutted by the record that cannot be resolved without an evidentiary hearing. *Coleman*, 183 Ill. 2d at 382 (when a petitioner's claims are based upon matters outside the record, the Act does not intend that such claims be adjudicated on the pleadings).

We have reviewed the record of the trial testimony as well as the transcript and records related to the instant postconviction proceeding. For the reasons previously discussed, the State's motion to dismiss raising solely the question of the legal sufficiency of the pleadings was erroneously granted. At this stage of the proceeding, taking all well-pleaded facts as true, we find the petition contains sufficient allegations of constitutional deprivation to require an evidentiary hearing. Accordingly, we remand for an evidentiary hearing consistent with the provisions of section 122—6 of the Act. 725 ILCS 5/122—6 (West 1998). During the evidentiary hearing, the court, pursuant to section 122—6 of the Act, may receive proof by affidavits, depositions, oral testimony, or other evidence. 725 ILCS 5/122—6 (West 1998).

On remand, the principles articulated by the Illinois Supreme Court in *People ex rel. Daley v. Fitzgerald*, 123 Ill. 2d 175, 183 (1988), will be instructive regarding resolution of discovery issues. The Illinois Supreme Court in *Daley* held that the circuit court has inherent authority to order discovery in the context of a postconviction proceeding, after a hearing for "good cause shown." *Daley*, 123 Ill. 2d at 183; *People v. Fair*, 193 Ill. 2d 256, 264-65 (2000). Circuit courts must exercise discretion in granting discovery requests because there exists the possibility for abuse of the discovery process in postconviction proceedings. *Daley*, 123 Ill. 2d at 183; *Fair*, 193 Ill. 2d at 264-65. The circuit court, consistent with the *Daley* case, should resolve discovery requests by considering the totality of the relevant circumstances, including the issues presented in the petition, "the scope of the discovery sought, the length of time between the conviction and the post-conviction proceeding, the burden [of granting discovery,] and the availability of the desired evidence through other sources." *Daley*, 123 Ill. 2d at 183-84; 725 ILCS 5/122—6 (West 1998).

Regarding the allegation of perjured testimony by serologist Pamela Fish, the experienced trial judge is to determine by conducting an evidentiary hearing whether the defendant has in fact been denied due process and been unfairly convicted as the result of perjured testimony provided by Pamela Fish. At the hearing, if defendant proves the testimony provided by Fish was in fact perjured, the trial court is to determine whether defendant's conviction was obtained as the result of the perjured testimony. In making that determination, the trial court must decide whether the perjured testimony was a significant factor at defendant's trial and whether such evidence provided any reasonable likelihood that the jury's verdict was affected by the perjured testimony. *Coleman*, 183 Ill. 2d at 392. If there is any reasonable likelihood that perjured testimony could have affected the judgment of the jury, then the conviction must be reversed and the case remanded for retrial. *Coleman*, 183 Ill. 2d at 392.

Our holding is limited to the conclusion that defendant is entitled to an evidentiary hearing regarding the allegation that Pamela Fish provided perjured testimony affecting the jury's verdict. We emphasize that we make no determination regarding the outcome of that hearing. We take no position on defendant's ability to prove his allegation. We take no position on whether Fish provided perjured testimony affecting the jury's verdict; rather, that is the precise issue to be determined by the evidentiary hearing. For the reasons previously discussed, we reverse the judgment of the circuit court dismissing the postconviction petition and remand for an evidentiary hearing consistent with the terms provided by section 122—6 of the Postconviction Act. 725 ILCS 5/122—6 (West 1998).

Reversed and remanded.

FITZGERALD SMITH, P.J., and GALLAGHER, J., concur.