2019 IL App (1st) 182393-U

FOURTH DIVISION
December 26, 2019

No. 1-18-2393

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

---

IN THE APPELLATE COURT
OF ILLINOIS
FIRST JUDICIAL DISTRICT

---

| | | |
|---|---|---|
| THE PEOPLE OF THE STATE OF ILLINOIS, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Respondent-Appellee, | ) ) | |
| v. | ) ) | No. 04 CR 19004 |
| DWAYNE MCCOY, | ) ) ) | Honorable |
| Petitioner-Appellant. | ) ) | Charles P. Burns, Judge Presiding. |

---

JUSTICE REYES delivered the judgment of the court.
Justices Lampkin and Burke concurred in the judgment.

**ORDER**

¶ 1    *Held*: Affirming the judgment of the circuit court of Cook County where petitioner failed to make a substantial showing of a due process violation as there was no reasonable likelihood that false testimony affected the judgment.

¶ 2    Petitioner Dwayne McCoy appeals the second-stage dismissal of his supplemental petition for relief (supplemental petition) under the Post-Conviction Hearing Act (Act) (725 ILCS 5/122-1 *et seq*. (West 2014)).  On appeal, petitioner contends the trial court erred in

dismissing his supplemental petition without an evidentiary hearing because he made a substantial showing that police misconduct led to the subornation of perjury in violation of his due process rights. For the following reasons, we affirm.

¶ 3                                    BACKGROUND

¶ 4     The issue petitioner raises on appeal requires only a limited discussion of the facts. Accordingly, we will briefly summarize the background of this case and will refer to additional facts and testimony as necessary in our analysis.

¶ 5     After a bench trial, petitioner was found guilty of first degree murder and sentenced to 65 years in the Illinois Department of Corrections (IDOC). At trial, the State established, through the eyewitness testimony of Anthony Phillips (Phillips) and Thurman Wade (Wade), that petitioner fatally shot the victim. In his defense, petitioner presented the testimony of Cornell Owens (Owens), who testified that petitioner was merely present when an unidentified man ran out of an alley, fired a handgun toward three individuals, and struck the victim. In rebuttal, however, the State presented Kaya Washington (Washington) who testified that while looking out of her bedroom window, she observed a man with no shirt on "tumble" out of a vehicle and that no one else was on the street. She then ducked down and heard gunshots a few seconds later. In finding the petitioner guilty of murder, the trial court determined that Phillips and Wade testified in a credible manner and that Owens was not a credible witness. Petitioner was sentenced to 65 years in the IDOC. On appeal, this court affirmed petitioner's conviction and sentence. *People v. McCoy*, 381 Ill. App. 3d 1137 (2008) (table) (unpublished order under Rule 23).

¶ 6     In 2009, petitioner filed an initial *pro se* postconviction petition arguing, in pertinent part, that trial counsel was ineffective for failing to impeach Washington with prior statements she

provided to the police. The trial court dismissed the petition, finding it to be frivolous and patently without merit. On appeal, petitioner asserted that he had raised an arguable claim of ineffective assistance of counsel for failing to impeach Washington. This court agreed and remanded the matter for second-stage proceedings. *People v. McCoy*, 409 Ill. App. 3d 1157 (2011) (table) (unpublished order under Rule 23).

¶ 7      On remand, counsel was appointed and petitioner was granted leave to file the supplemental petition. In addition to the ineffective assistance of counsel claim asserted in the initial petition, petitioner added a claim that Washington presented perjured testimony because she was threatened by the police, thus depriving petitioner of a fair trial. Petitioner supported his argument with two documents from Washington: (1) a notarized letter; and (2) an affidavit. In the documents Washington averred that at petitioner's trial she testified to what police officers instructed her to say because they threatened her with jail if she failed to comply. In addition, Washington stated in the notarized letter that on the evening in question she awoke to the sound of gunshots, but did not go to the window because gunshots were common in the area and she knew going to the window could be dangerous. Washington provided a conflicting account in her affidavit, wherein she stated that after being awoken by gunfire, she observed a vehicle leaving the scene.

¶ 8      The State filed a motion to dismiss arguing petitioner had waived his ineffective assistance of counsel claim and his supplemental petition failed to set forth a cognizable perjury claim. After hearing arguments on both the *pro se* and supplemental petitions, the trial court granted the State's motion to dismiss, but solely on the ineffective assistance of counsel claim. The trial court found it lacked jurisdiction to consider petitioner's perjury claim raised in the supplemental petition because it exceeded the scope of the appellate court's mandate.

Consequently, the trial court declined to address the perjury claim.

¶ 9    Petitioner appealed, and this court remanded, finding the trial court had jurisdiction to consider petitioner's perjury claim. *People v. McCoy*, 2017 IL App (1st) 160221-U. We therefore directed the trial court to consider the issue in a second stage proceeding. *Id*. On remand, the trial court heard the parties' arguments and granted the State's motion to dismiss the supplemental petition. In a written order, the trial court found Washington's recantation did not render her earlier testimony to be false as her affidavit corroborated a portion of her testimony at trial. The trial court additionally found that Washington's testimony was not material to the finding of guilt. This appeal followed.

¶ 10                                ANALYSIS

¶ 11    On appeal, petitioner contends the trial court erred in dismissing the supplemental petition without an evidentiary hearing because he made a substantial showing of a constitutional violation, namely that police suborned Washington's perjured testimony. Petitioner further argues there is a reasonable likelihood that Washington's false testimony affected the trial court's judgment as (1) Washington corroborated Phillips' and Wade's testimonies and rebutted Owens' testimony, and (2) the trial court explicitly relied on Washington's testimony in determining the credibility of Phillips, Wade and Owens. In response, the State maintains that it was unaware Washington's testimony was false, and regardless, her testimony did not affect the trial court's judgment as the evidence against petitioner was overwhelming. Based on the procedural posture of this case, we find the police, and therefore the State, knew Washington testified falsely at trial. We further find, however, that there is no reasonable likelihood Washington's testimony could have affected the trial court's judgment.

¶ 12    We begin by noting the familiar principles regarding postconviction proceedings. The

Act provides criminal defendants a remedy to address substantial violations of their federal or state constitutional rights in their original trial or sentencing hearing. 725 ILCS 5/122-1 *et seq*. (West 2014); *People v. Allen*, 2015 IL 113135, ¶ 20. A postconviction action is not a substitute for or an addendum to a direct appeal, but is a collateral attack on a prior conviction or sentence. *People v. Rissley*, 206 Ill. 2d 403, 411-12 (2003). The Act creates a three-stage procedure for postconviction relief. *Allen*, 2015 IL 113135, ¶ 21. At the first stage, a postconviction petition may be summarily dismissed if the claims in the petition are frivolous or patently without merit. 725 ILCS 5/122-2.1(a)(2) (West 2014); *People v. Hodges,* 234 Ill. 2d 1, 10 (2009). If the petition survives initial review, the process moves to the second stage, where counsel may be appointed to an indigent defendant. 725 ILCS 5/122-4 (West 2014). After an appointment, Illinois Supreme Court Rule 651(c) (eff. Feb. 6, 2013) requires the appointed counsel to consult with petitioner, examine the record, and make any amendments that are necessary to the petition previously filed by the *pro se* defendant. *People v. Wheeler*, 392 Ill. App. 3d 303, 307 (2009). The State may then file a motion to dismiss or an answer to the postconviction petition. 725 ILCS 5/122-5 (West 2014).

¶ 13     If the State moves to dismiss the petition, the trial court may hold a dismissal hearing, which is still part of the second stage. *Wheeler,* 392 Ill. App. 3d at 308. At this stage in the proceedings, all well-pleaded facts in the petition and any supporting affidavits are to be taken as true. *Pitsonbarger*, 205 Ill. 2d at 455; *People v. Coleman,* 183 Ill. 2d 366, 390 (1998) ("By seeking to dismiss the post-conviction petition, the State assumed the truth of the factually supported allegations contained in that petition, at least for purposes of the motion. Therefore, the State, as the movant, has eliminated all factual issues from the inquiry."). The trial court must then determine whether the petition and any accompanying documentation make a

substantial showing of a constitutional violation. *People v. Edwards*, 197 Ill. 2d 239, 246 (2001). If a substantial showing of a constitutional violation is set forth, then the petition advances to the third stage where the trial court conducts an evidentiary hearing. *Id*. We review the dismissal of a postconviction petition without an evidentiary hearing *de novo*. *Pitsonbarger*, 205 Ill. 2d at 456. Under a *de novo* analysis, we perform the same analysis that the trial court would perform. *People v. Tyler*, 2015 IL App (1st) 123470, ¶ 151.

¶ 14 Here, petitioner contends he made a substantial showing of a constitutional violation because Washington presented perjured testimony. "The State's knowing use of perjured testimony to obtain a criminal conviction constitutes a violation of due process." *People v. Smith*, 352 Ill. App. 3d 1095, 1101 (2004). In order to establish a due process violation, the prosecutor trying the case need not have known that the testimony was false; knowledge on the part of any representative or agent of the prosecution, including the police, is sufficient. *Id*. In this case, because of the discussion with police and the coercion described in Washington's affidavit and notarized letter, police had reason to know that Washington lied at trial. See *id*.

¶ 15 While we must accept that the State knew Washington provided false testimony, our analysis does not end here. In Illinois, "[a] person commits perjury when, under oath or affirmation, in a proceeding or in any other matter where by law the oath or affirmation is required, he or she makes a false statement, *material to the issue or point in question*, knowing the statement is false." (Emphasis added.) 720 ILCS 5/32-2 (West 2014); *People v. Laboy*, 227 Ill. App. 3d 654, 662 (1992). Thus, false testimony does not constitute perjury unless the testimony was material to the defendant's guilt or innocence. *Id*. at 663. A conviction obtained by the knowing use of false testimony must therefore be set aside only "if there is a reasonable likelihood that the false testimony could have affected the verdict." *People v. Thurman*, 337 Ill.

App. 3d 1029, 1032 (2003); see also *People v. Lucas*, 203 Ill. 2d 410, 424 (2002). This standard

is equivalent to the harmless error standard. *People v. Olinger*, 176 Ill. 2d 326, 348 (1997).

Under such a standard, a petitioner is not entitled to an evidentiary hearing where the evidence

was overwhelming or the challenged testimony was not crucial to the State's case. *Lucas*, 203

Ill. 2d at 424.

¶ 16    Here, our review of the record reveals the evidence against petitioner was overwhelming,

Washington's testimony was not crucial to the State's case, and the trial court did not rely on

Washington's testimony to the extent petitioner alleges. See *id*.

¶ 17    The record demonstrates that Phillips and Wade were both eyewitnesses to the offense,

they each provided detailed testimony, and their testimonies were consistent with each other.

According to both Phillips and Wade: on the evening of the offense they were in the backseat of

petitioner's cream-colored vehicle, the victim was in the front passenger seat, and petitioner was

driving; petitioner and the victim drank a bottle of gin out of plastic cups while petitioner drove;

after they finished the bottle, the victim vomited in the vehicle and removed his jacket and shirt;

an hour later petitioner pulled over and asked the victim to drive; as petitioner and the victim

walked around the front of the vehicle, petitioner shot the victim five times with a handgun; after

the victim fell to the ground, petitioner attempted to shoot him again but the firearm "clicked"

and did not discharge; petitioner then began stomping on the victim's head. Phillips additionally

testified that when the shooting began, he heard one gunshot at first, then a few seconds later he

observed and heard several more gunshots in rapid succession. He also described the firearm as

a silver automatic handgun. Wade similarly testified petitioner shot the victim twice in rapid

succession, then a few seconds later he shot the victim three more times in rapid succession with

a chrome .38 caliber automatic handgun. Both men testified petitioner shot the victim five times.

We acknowledge that Phillips and Wade admitted they had been drinking and smoking marijuana earlier that evening; however, they also testified that they did not hallucinate and could remember the events that transpired that night.

¶ 18    In addition to the detailed and consistent nature of Phillips' and Wade's testimonies, the record demonstrates their testimonies were also corroborated by additional evidence presented by the State: (1) the victim's body was discovered in the location described by the witnesses and the victim was not wearing a shirt; (2) there were two plastic cups discovered at the scene, one in the victim's hand and a second cup on which petitioner's fingerprints were discovered; (3) four .38 caliber cartridge casings were discovered at the scene which had all been fired from the same firearm; (4) three fired bullets were recovered from the victim's body and a fired bullet was recovered from the street, and they had all been fired from the same firearm;[1] (5) the victim had been shot five times; and (6) the medical examiner testified the victim displayed wounds consistent with the offender stomping on his head or eye area. We note that the plastic cup with petitioner's fingerprints independently connected petitioner to the scene of the offense. We find that the detailed and consistent testimonies of Phillips and Wade, in conjunction with the corroborating evidence, overwhelmingly supported petitioner's conviction. See *id.*

¶ 19    In addition, Washington's testimony was not crucial to the State's case for several reasons. See *id.* First, her testimony did not inculpate petitioner—she did not identify petitioner as the shooter or provide any evidence pointing to his guilt. Second, although Washington's testimony contradicted Owens' account that three individuals were on the street and corroborated that a vehicle was involved, neither her letter nor her affidavit affirmatively contradicts those points. Third, the record reveals that the trial court did not rely on Washington's testimony to

---

[1] It should be noted as the firearm was not recovered, it could not be determined whether the cartridge casings were fired from the same firearm as the bullets.

the extent petitioner alleges. The trial court's comments in support of its judgment demonstrate that although Washington corroborated the testimonies of Phillips and Wade, the trial court found Phillips and Wade credible for other reasons. Specifically, the court found it significant that Phillips and Wade were more friendly with petitioner than they were with the victim, yet they testified against petitioner. The trial court further stated that it found the evidence against petitioner overwhelming "based on the—primarily on the quality and observing [Phillips' and Wade's] demeanor and their manner while testifying and the compelling nature of the testimony of these two guys *** Based on the testimony of these two witnesses and the absolutely compelling way that they testified and the sheer believability that they oozed from the witness stand coupled with all the evidence corroborated [*sic*] exactly what they said, down to the number of shots, the thing about the [plastic] glasses and the drinking and everything else, and then corroborated further by the testimony of this young girl today, Kaya Washington." The trial court's acknowledgment that Phillips' and Wade's testimonies were "corroborated further" by Washington does not demonstrate a reasonable likelihood that Washington's false testimony could have altered the trial court's credibility determination or that it could have affected the judgment. Moreover, we observe that on direct appeal from petitioner's conviction, the appellate court rejected petitioner's challenge to the credibility of Phillips and Wade. *McCoy*, 381 Ill. App. 3d 1137 (2008) (table) (unpublished order under Rule 23).

¶ 20    With regard to Owens, the record reveals the trial court found his testimony was "totally contradict[ed]" by petitioner's theory of defense. Specifically, the trial court stated the fact that Owens never testified to observing a vehicle contradicted petitioner's theory that he was drinking in the vehicle with the victim. The trial court additionally concluded Owens' testimony that he happened to notice petitioner on the corner of the street moments before the alleged unidentified

offender shot the victim was unbelievable given that petitioner's theory placed him in the vehicle. Accordingly, although Washington contradicted Owens, the record demonstrates the trial court had an independent basis for determining that Owens was not a credible witness.

¶ 21    In light of the overwhelming evidence discussed above, the circumstantial nature of Washington's testimony, and the trial court's credibility determinations, we find petitioner has failed to make a substantial showing that Washington's false testimony had a reasonable likelihood of affecting trial court's judgment. See *Lucas*, 203 Ill. 2d at 424; *Thurman*, 337 Ill. App. 3d at 1032. We therefore affirm the trial court's dismissal of the supplemental petition. See *Pitsonbarger*, 205 Ill. 2d at 456.

¶ 22    In reaching this conclusion, we acknowledge that petitioner relies on *People v. Mitchell*, 2012 IL App (1st) 100907, ¶¶ 65-68, and *People v. Hernandez*, 298 Ill. App. 3d 36, 40-41 (1998), in support of his claim that an evidentiary hearing is required. In *Mitchell*, no eyewitnesses identified the petitioner as the offender and no physical evidence connected him to the offense. *Mitchell*, 2012 IL App (1st) 100907, ¶ 15. While an officer testified at trial that the petitioner had confessed to the crime and admitted his membership in a gang that had a motive to kill the victim, the petitioner consistently denied that he confessed or admitted he belonged to the gang. *Id.* ¶¶ 16, 68. The State then presented perjured rebuttal testimony which "provide[d] the most convincing connection between [the petitioner] and the motive for the crime," *i.e.*, testimony from a gang member regarding the petitioner's membership in the gang. *Id.* ¶ 68. On appeal from the dismissal of the petitioner's postconviction petition, the appellate court determined that the perjured testimony could have affected the verdict, and an evidentiary hearing was therefore required. *Id.* ¶¶ 67-68. The case at bar is readily distinguishable. Here, unlike in *Mitchell*, the State presented two eyewitnesses and physical evidence linking petitioner

to the offense. See *id.* ¶ 15. Moreover, unlike the perjuring witness in *Mitchell*, Washington did not provide testimony of petitioner's motive. See *id.* ¶ 68. Accordingly, *Mitchell* is inapposite.

¶ 23 In *Hernandez*, the petitioner's fellow gang member testified that he drove the petitioner to the scene of the shooting and that the petitioner later made several incriminating remarks. *Hernandez*, 298 Ill. App. 3d at 38. After the petitioner was convicted, the witness signed an affidavit indicating that he was with the petitioner on the day of the offense, that the petitioner could not have committed the crime, and that he testified falsely as a result of police abuse. *Id.* The postconviction court found the witness's affidavit was not reliable and dismissed the petitioner's perjury claim without an evidentiary hearing. *Id.* at 40. On appeal, the court remanded for an evidentiary hearing, holding that because the postconviction judge was different from the trial judge, a credibility determination could not reasonably be made without observing the witness. *Id.* at 40-41.

¶ 24 Petitioner's reliance on *Hernandez* is misguided. In this case, unlike the recanting witness in *Hernandez*, Washington did not incriminate petitioner at trial. See *id.* at 38. In addition, unlike the postconviction court in *Hernandez*, the trial court here assumed petitioner's supporting affidavit was true and considered the merits of petitioner's claim. See *id.* at 40. *Hernandez* is therefore distinguishable and fails to support petitioner's perjury claim. See *id.* at 38-41.

¶ 25                                                    CONCLUSION

¶ 26 For the reasons stated above, we affirm the judgment of the circuit court of Cook County.

¶ 27 Affirmed.